1  MEHRNAZ BOROUMAND SMITH (State Bar No. 197271)
   TOWNSEND AND TOWNSEND AND CREW LLP
2  Two Embarcadero Center, 8th Floor
3  San Francisco, CA 94111
   Telephone: (415) 576-0200
4  Facsimile: (415) 576-0300
   Email: mboroumand@townsend.com
5
6  *Pro hac vice applications to be submitted for:*
   JAMES F. BOGAN III , GA State Bar # 065269
7  C. ALLEN GARRETT JR., GA State Bar # 286335
   KILPATRICK STOCKTON LLP
8  1100 Peachtree Street, Suite 2800
9  Atlanta, Georgia 30309
   Telephone: (404) 815-6500
10 Facsimile: (404) 815-6555
   Email: JBogan@kilpatrickstockton.com
11 Email: AGarrett@kilpatrickstockton.com

12 Attorneys for Defendant
13 INGENIO, INC. d/b/a AT&T INTERACTIVE

14            UNITED STATES DISTRICT COURT

15        FOR THE NORTHERN DISTRICT OF CALIFORNIA

16               SAN FRANCISCO DIVISION

17

18 JAMES THOMAS LONG d/b/a JAMES          )
   THOMAS LONG PHOTOGRAPHY, on            )
19 behalf of himself and the proposed class,  )   Case No. _____
                                          )
20                                        )
            Plaintiff,                    )
21                                        )   **NOTICE OF REMOVAL**
                                          )
22      v.                                )
                                          )
23 INGENIO, INC. d/b/a AT&T               )
   INTERACTIVE, a corporation; and        )
24 DOES 1-50,                             )
                                          )
25                                        )
            Defendants.                   )
26 _____)

27      **PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453,

28 Defendant Ingenio, Inc. d/b/a AT&T Interactive removes this action from the Superior Court of

   NOTICE OF REMOVAL                                              - 1 -

1  California, San Francisco County, on the following grounds:

2      1.    On November 4, 2010, Plaintiff James Thomas Long d/b/a James Thomas Long

3  Photography, on behalf of himself and a putative class, filed an action styled *James Thomas Long*

4  *d/b/a James Thomas Long Photography, on behalf of himself and the proposed class v. Ingenio,*

5  *Inc. d/b/a AT&T Interactive, a corporation; and Does 1-50*, Case No. CGC-10-505114, in the

6  Superior Court of California, San Francisco County (the "State Court Action").

7      2.    Defendant was served with the complaint in the State Court Action (the

8  "Complaint") on November 17, 2010. A copy of the Complaint and all other process served upon

9  Defendant in the State Court Action is attached hereto as Exhibit A.

10      3.    In accordance with 28 U.S.C. § 1446(b), Defendant is filing this Notice of

11  Removal within thirty days of service of the Complaint.

12      4.    Promptly after filing this Notice of Removal, Defendant will give written notice of

13  the removal to the Plaintiff through his attorneys of record in the State Court Action, as well as to

14  the Clerk of the Court in the State Court Action, as required by 28 U.S.C. § 1446(d).

15  **Factual Background**

16      5.    Plaintiff has sued the wrong party. Plaintiff has filed this class action against a

17  Defendant from which it ordered no services. As a result of this confusion, Plaintiff identifies in

18  the Complaint "Terms of Use" that apply to an advertising product and service that is different

19  than the product and service that Plaintiff actually bought. Nevertheless, whether Plaintiff's

20  allegations are accepted as true with respect to the improperly-named defendant (Ingenio, Inc.

21  ("Ingenio")), or whether the jurisdictional issue is evaluated on the true facts with respect to the

22  entity with which Plaintiff actually transacted business, federal subject matter jurisdiction exists

23  over Plaintiff's claims.

24      6.    As shown on the face of the "Terms of Use" attached to the Complaint as Exhibit

25  1, Ingenio provides a "Pay Per Call" service whereby advertisers "bid" for placement of their ad

26  in specific "category advertisements" that are displayed in response to certain types of online

27  searches. *See, e.g.,* Compl., Ex. 1 ¶ 6(a). This bidding process is mostly a "self-service" process

28  (*i.e.*, the advertiser provides the necessary information online) that does not involve interaction

NOTICE OF REMOVAL

- 2 -

1  with a sales representative. Moreover, the Ingenio Terms of Use unambiguously provide that the

2  service may be cancelled at any time (although the advertiser remains responsible for any

3  previously-incurred charges). *See id.* ¶ 4(b) ("You have the right to cancel Your Pay Per Call

4  Advertisement at any time ....").

5      7.     In contrast to the specific form of "Pay Per Call" advertising service provided by

6  Ingenio, other AT&T companies offer a "Pay Per Call" payment alternative for typical print and

7  Internet advertising. This latter form of "alternative payment method" is actually the "Pay Per

8  Call" service acquired by Plaintiff and challenged in this putative class action.

9      8.     Plaintiff acquired his advertising from a telephonic sales representative employed

10  by Pacific Bell Directory, a California corporation and the sales agent for AT&T Advertising,

11  L.P. (not Ingenio). In connection with this sale to Plaintiff, a "voice verification" recording was

12  made of the conversation in which Plaintiff agreed to buy his advertising. This voice verification

13  recording demonstrates that, with respect to this alternative payment method that Plaintiff agreed

14  to utilize: (a) an advertiser is assigned one or more dedicated phone numbers; (b) any such phone

15  numbers are displayed in advertisements published in either in print telephone directories or on

16  the Internet; and then (c) the advertiser is charged for each call the advertiser receives to the

17  dedicated phone numbers, provided the call lasts a certain period of time and satisfies other

18  criteria. Unlike the "Pay Per Call" service operated by Ingenio, the advertiser is not free to cancel

19  the "Pay Per Call" payment method for published advertising at any time, because, among other

20  reasons, advertisements in print directories cannot be "canceled" once the print directories are

21  distributed and are "on the street." *Cf.* Compl. ¶¶ 68-70 (alleging that Defendant refused to

22  cancel Plaintiff's service, despite Plaintiff having requested cancellation "in writing"). The

23  typical contractual term, as was the case with Plaintiff's contract, is twelve months.

24      9.     In this case, Plaintiff agreed to purchase a "DQC" or double half-column ad (about

25  the size of a business card) to appear in five different Bay area print telephone directories

26  (Freemont-Hayward, Tri-Valley, San Mateo Valley, Oakland, and San Francisco), as well as on

27  the Internet. Rather than pay a monthly amount for this advertising, Plaintiff agreed to pay

28  $31.00 for any qualifying call to the dedicated phone numbers displayed in his ads.

NOTICE OF REMOVAL     - 3 -

1      10.    After buying the advertising, Plaintiff complained about the nature and quality of

2 the telephone calls made to the dedicated phone numbers. The allegations in the Complaint

3 describe some of these complaints. Although these allegations are disputed, they confirm that

4 Plaintiff's complaint is with the "Pay Per Call" *method* of paying for advertising and not the "Pay

5 Per Call" service offered by Ingenio, which Plaintiff did not buy.

6      11.    Although Plaintiff has named the wrong Defendant, his claims nevertheless are

7 removable to federal district court, because they challenge a nationwide service on behalf of a

8 nationwide class. As Plaintiff alleges, the "Pay Per Call" method of paying for advertising is

9 used throughout the United States. *See* Compl. ¶ 74 (alleging that Pay Per Call services are

10 marketed "throughout the State of California and the United States"). Based on this allegation,

11 Plaintiff desires to serve as the representative of a nationwide class of all advertisers who have

12 ever used this "Pay Per Call" method of payment. *See id.* ¶ 71.

13      12.    Because Plaintiff seeks to represent a putative nationwide class and seeks the

14 recovery of well in excess of $5,000,000 in damages, this action is removable under the Class

15 Action Fairness Act ("CAFA"). This is true whether the Court credits Plaintiff's allegation that

16 Ingenio provides the services at issue (which it does not do, as set forth above), or considers the

17 facts pertaining to the AT&T companies that actually provide advertising which is paid for via

18 the "Pay Per Call" method of payment described in Plaintiff's Complaint.

19           **Diversity Jurisdiction Exists Over the Putative Nationwide Class Action**

20      13.    Pursuant to 28 U.S.C. §§ 1441(a) and 1446(a), this is the district court to which

21 removal is proper. The Superior Court of California, San Francisco County, is located within the

22 Northern District of California.

23      14.    Diversity jurisdiction is proper under 28 U.S.C. §§ 1332(d) and 1453(b), because

24 this case is (a) a class action (b) in which at least one Plaintiff is a citizen of a state different from

25 Defendant and (c) the matter in controversy exceeds $5,000,000.

26      15.    As noted above, the Complaint seeks relief on behalf of a putative nationwide

27 class defined as "[a]ll persons Defendant charged for AT&T Interactive Pay Per Call Advertising

28 Service," which includes "thousands of customers . . .throughout the state of California and the

NOTICE OF REMOVAL        - 4 -

1 United States." Compl. ¶¶ 71, 74. The class thus includes advertisers in any state who utilized
2 the Pay Per Call method of paying for advertising.

3     16.     Ingenio, the sole Defendant named by Plaintiff, is a Delaware corporation with its
4 principal place of business in California. Compl. ¶ 8. Assuming the truth of Plaintiff's
5 allegations with respect to Ingenio, at least one member of the class is a resident of a state other
6 than Ingenio.

7     17.     In fact, however, other AT&T companies doing business under the names "AT&T
8 Advertising Solutions" and "Yellowpages.com" provide the Pay Per Call advertising payment
9 method at issue in this case. In those regions where an AT&T company publishes print telephone
10 directories, the regional print directory publisher also provides Pay Per Call advertising payment
11 services, as detailed below. In those areas of the country where no print directories are published
12 – those areas outside of AT&T's "telephony footprint" – Pay Per Call advertising payment
13 services are provided by YellowPages.com, LLC, a Delaware limited liability company with its
14 principal place of business in California, whose members are Southwestern Bell Yellow Pages,
15 Inc. (a Missouri corporation with its principal place of business in Missouri) and IYP Holding
16 Corp. (a Delaware corporation with its principal place of business in Georgia).

17     18.     AT&T companies publish print directories in Connecticut (through SNET
18 Information Services, Inc., a Connecticut corporation with its principal place of business in
19 Connecticut) and in five other regions: (a) the Midwest, encompassing Indiana, Michigan, Ohio,
20 and Wisconsin (through Ameritech Publishing, Inc., a Delaware corporation with its principal
21 place of business in Michigan); (b) the South Central states, encompassing Arkansas, Kansas,
22 Missouri, Oklahoma, and Texas (through AT&T Advertising, L.P., a Delaware Limited
23 Partnership with its principal place of business in Missouri,[1] acting through its sales agent

24

25

26 [1] The partners of AT&T Advertising, L.P. are Pacific Bell Directory (a California corporation
with its principal place of business in California), Southwestern Bell Yellow Pages Resources,
27 Inc. (a Delaware corporation with its principal place of business in Missouri), and Southwestern
Bell Yellow Pages Services, Inc. (a Delaware corporation with its principal place of business in
28 Illinois).

1  Southwestern Bell Yellow Pages, Inc., a Missouri corporation with its principal place of business
2  in Missouri); (c) the Southeast, encompassing Alabama, Florida, Georgia, Kentucky, Louisiana,
3  Mississippi, North Carolina, South Carolina, and Tennessee (through BellSouth Advertising &
4  Publishing Corp., a Georgia corporation with its principal place of business in Georgia); (d) the
5  Southwest, encompassing certain communities in Arizona and Nevada (through Southwestern
6  Bell Advertising Group, Inc., a Delaware corporation with its principal place of business in
7  Arizona); and (e) the West Coast, encompassing California and other areas of Nevada (through
8  AT&T Advertising, L.P., acting through its sales agent Pacific Bell Directory, a California
9  corporation with its principal place of business in California).

10      19.    Thus, AT&T operating subsidiaries print directories and support Pay Per Call
11  advertising payment services in 22 different states across the country. These subsidiaries,
12  however, do not maintain a principal place of business in each of these states. Typically, a
13  regional area is served from a central location, such as Michigan (which serves the Midwest),
14  Missouri (which serves the South Central states), or Georgia (which serves the Southeast).

15      20.    Accordingly, if the citizenship of the AT&T subsidiaries which actually provide
16  the Pay Per Call advertising payment services described in the Complaint is considered, at least
17  one member of the putative nationwide class is a citizen of a state other than the defendants.

## Amount in Controversy

19      21.    Pursuant to 28 U.S.C. § 1332(d), "the district courts shall have original jurisdiction
20  of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000."
21  For purposes of satisfying the $5,000,000 jurisdictional requirement, "the claims of the individual
22  class members shall be aggregated." 28 U.S.C. § 1332(d)(6).

23      22.    The Complaint alleges that Defendant deceived Plaintiff and the other members of
24  the putative class into agreeing to utilize Pay Per Call advertising payment services by failing to
25  disclose "material information concerning the Service including the actual capabilities of [the]
26  technology and the material terms that Defendant enforces against each Subscriber,'" as well as
27  by improperly charging for "Junk Calls." Compl. ¶¶ 84-85.

28      23.    Based on these allegations, Plaintiff asserts numerous claims, including (a) claims

NOTICE OF REMOVAL                                         - 6 -

1  under California Business & Professions Code § 17200 seeking, among other relief, "full
2  restitution" of all moneys "wrongfully obtained" from the class; (b) claims under California
3  Business & Professional Code Section 17500 seeking, among other relief, restitution of all
4  amounts paid by the class; and (c) "Unjust Enrichment," seeking disgorgement of the "ill-gotten
5  revenue" Defendant received through "fees collected from Junk Calls." Compl. ¶¶ 80-120. The
6  class thus seeks, among other relief, a full refund of all Pay Per Call charges ever collected by the
7  AT&T companies providing the payment service.

8      24.    Assuming the truth of Plaintiff's allegations (which are disputed), Plaintiff's claims
9  put far more than $5,000,000 in controversy.

10     25.    As of the last date for which data is available, more than $9,000,000 in Pay Per
11 Call charges were collected during the calendar year 2010 alone. Plaintiff and the putative class,
12 moreover, seek damages for the entire limitations period, thereby putting an ever greater amount
13 in controversy. *See* Compl. ¶ 71 (defining the class as "All persons Defendant charged for AT&T
14 Interactive Pay Per Call Advertising Services," without limiting the temporal scope of the class).[2]

15     26.    Additionally, Plaintiff seeks the recovery of attorneys' fees. *See* Compl., at p. 25.
16 Such fees also may be considered in establishing amount-in-controversy and further confirm the
17 putative class seeks far in excess of the $5,000,000 threshold for removal under CAFA.

18     27.    Finally, as explained above, Plaintiff's contention that Defendant has "waived" its
19 right to remove (Compl. ¶ 19) relies on "Terms of Use" that were never provided to Plaintiff and
20 that govern a different service than the Pay Per Call advertising payment service challenged in the
21 Complaint. In any event, Plaintiff disputes the enforceability of any Terms and Conditions. *See*
22 *id.* ¶¶ 42-49. Moreover, even if the Terms of Use attached to the Complaint did govern Plaintiff's
23 advertising purchase, this case still is properly removable to this federal district court, as this
24 district court, as with the Superior Court of California, sits in and is a court of "the City and

25

26 [2] In fact, the Terms and Conditions that actually govern the advertising acquired by Plaintiff limit
27 recovery to charges incurred during the six months before the claim is asserted. Plaintiff,
   however, has challenged the enforceability of any Terms and Conditions on unconscionability
28 grounds. *See, e.g.,* Compl. ¶¶ 42-49.

1   County of San Francisco." *See id.* ¶ 17 & n.1.

2        WHEREFORE, Defendant hereby removes the State Court Action from the Superior

3   Court of California, San Francisco County to this Court.

4   Dated: December 17, 2010          Respectfully submitted,

5                         TOWNSEND AND TOWNSEND AND CREW LLP

6

7                         *M. Boroumand Smith*

8                         MEHRNAZ BOROUMAND SMITH

9                         Attorneys for Defendant
                            INGENIO, INC. d/b/a AT&T INTERACTIVE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL                                           - 8 -

1

## PROOF OF SERVICE

2

3

4

I, Stacie Treposkoufes, am a citizen of the United States and an employee in the City and County of San Francisco, State of California. I am over the age of eighteen and not a party to the within action. My business address is Two Embarcadero Center, 8th Floor, San Francisco, CA 94111.

5

6

On December 17, 2010, I served the following document(s) on the party(ies) in this action: **NOTICE OF REMOVAL**

7

8

9

10

11

(X)    By Mail: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit. CCP §1013(a); Fed. Rule Civ. Proc. 5(b).

12

13

14

( )    By Overnight Courier: I am "readily familiar" with the firm's practice of collection and processing correspondence for Overnight Courier. Under that practice it would be deposited with said Overnight Courier on that same day with postage thereon fully prepaid at San Francisco, California, in the ordinary course of business. CCP §1013(c).

15

16

17

( )    By Personal Service by Messenger: I caused such documents to be placed in an envelope and given to an employee of a courier service with instructions to hand deliver such envelope to the below-referenced address on _____. Fed. Rule Civ. Proc. 5(b).

18

19

( )    By Facsimile: On the same date the document was also transmitted by facsimile transmission from facsimile number (415) 576-0300 to the following persons at the fax numbers indicated below.

20

(X)    By E-mail: By electronic mail to the addresses below.

21

22

23

24

Daniel T. LeBel
Consumer Law Practice of Daniel T. LeBel
601 Van Ness Ave., Opera Plaza, Ste. 2080
San Francisco, CA 94102
Tel: (415) 513-1414
Email: danlebel@consumerlawpractice.com

Nancy Hersh – **VIA U.S. MAIL ONLY**
Charles Kelly
Hersh & Hersh
601 Van Ness Ave., Opera Plaza, Ste 2080
San Francisco, CA 94102

25

26

27

Executed on December 17, 2010, at San Francisco, California

Stacie Treposkoufes

28

NOTICE OF REMOVAL                                                                                     - 9 -

Exhibit A

 CT Corporation

**Service of Process Transmittal**
11/17/2010
CT Log Number 517620847

**TO:** Tyrone Tartt
Yellowpages.com LLC
611 N Brand Blvd, Fl 5
Glendale, CA 91203-3288

**RE:** **Process Served in California**

**FOR:** Ingenio, Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | James Thomas Long, etc., on behalf of himself and the proposed class, Pltf. vs. Ingenio, Inc., etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit, Cover Sheet, Attachment(s), Stipulation Form, Statement Form, Proof of Service Form |
| **COURT/AGENCY:** | San Francisco County, Superior Court, CA Case # CGC10505114 |
| **NATURE OF ACTION:** | Class Action - Defendant engaged in unfair business practices in the marketing, sale and performance of its "AT&T Interactive Pay Per Call Advertising Service" - Seeking declaratory relief |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 11/17/2010 at 14:55 |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | Daniel T. LeBel<br>Consumer Law Practice of Daniel T. LeBel<br>601 Van Ness Avenue<br>Opera Plaza<br>Suite 2080<br>San Francisco, CA 94102<br>415-513-1414 |
| **REMARKS:** | Please note that page 2 of Cover Sheet was not received with documents at time of service. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 11/17/2010, Expected Purge Date: 11/22/2010<br>Image SOP<br>Email Notification, Tyrone Tartt ttartt@yellowpages.com<br>Email Notification, Jonathan Blake jb9083@att.com<br>Email Notification, Dennis Moore dmoore@yellowpages.com<br>Email Notification, Tomiko Austin taustin@yellowpages.com<br>Email Notification, Gretchen Emge gretchen.emge@att.com |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>Nancy Flores<br>818 West Seventh Street<br>Los Angeles, CA 90017<br>213-337-4615 |

Page 1 of  1 / CH

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Daniel T. LeBel, SBN 246169<br>Consumer Law Practice of Daniel T. LeBel<br>601 Van Ness Avenue, Suite 2080<br>San Francisco, CA 94102<br>TELEPHONE NO: (415) 488-6540    FAX NO: (877) 563-7848<br>ATTORNEY FOR (Name): Plaintiff James Thomas Long | FOR COURT USE ONLY<br>**ENDORSED**<br>**FILED**<br>San Francisco County Superior Court<br><br>NOV - 4 2010<br><br>CLERK OF THE COURT<br>BY: PARAM NATT<br>Deputy Clerk |
|---|---|

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS: 400 McAllister Street
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: San Francisco Unlimited Division

CASE NAME:
James Thomas Long v. Ingenio, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited    [ ] Limited<br>(Amount        (Amount<br>demanded      demanded is<br>exceeds $25,000)  $25,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CGC-10-505114<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[✓] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [✓] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties      d. [ ] Large number of witnesses
   b. [✓] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve              in other counties, states, or countries, or in a federal court
   c. [✓] Substantial amount of documentary evidence      f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.[✓] monetary   b.[✓] nonmonetary; declaratory or injunctive relief   c.[ ] punitive
4. Number of causes of action (specify): (4): Decl. Relief; Unfair Bus. Pract.; False Advertising; Unjust Enrichment
5. This case [✓] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. (You may use form CM-015.)

Date: 11/4/2010
Daniel T. LeBel
_____(TYPE OR PRINT NAME)_____        ►  ___SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)___

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

11/17@2#4

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Ingenio, Inc. d/b/a AT&T Interactive, a corporation, and DOES 1-50,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

James Thomas Long d/b/a James Thomas Long Photography, on behalf of himself and the proposed class

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Francisco Superior Court | CASE NUMBER<br>*(Número del Caso):* C G C - 1 0 - 5 0 5 1 1 4 |
|---|---|

400 McAllister Street,

San Francisco, CA 94102

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel T. LeBel, 601 Van Ness Avenue, Suite 2080, San Francisco, CA 94102; (415) 488-6540

| DATE: 11/4/2010<br>*(Fecha)* | CLERK OF THE COURT | Clerk, by<br>*(Secretaria)* | P NATT | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Ingenio, Inc. d/b/a AT&T Interactive, a Corporation

under: ☑ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

1

2  Daniel T. LeBel, SBN 246169
   danlebel@consumerlawpractice.com
3  **CONSUMER LAW PRACTICE**
   **OF DANIEL T. LEBEL**
4  601 Van Ness Avenue,
   Opera Plaza, Suite 2080
5  San Francisco, CA 94102
6  Tel: (415) 513-1414

7  Nancy Hersh, SBN 49091
   Charles Kelly, SBN 122253
8  **HERSH + HERSH**
9  **A PROFESSIONAL CORPORATION**
   601 Van Ness Avenue,
10 Opera Plaza, Suite 2080
   San Francisco, CA 94102
11 Tel: (415) 441-5544

12 **ADDITIONAL COUNSEL**
   **LISTED ON SIGNATURE PAGE**
13

14 *Attorneys for Individual and*
   *Representative Plaintiff*
15 *James Thomas Long d/b/a*
   *James Thomas Long Photography*

16

ENDORSED
**FILED**
San Francisco County Superior Court

NOV - 4 2010

CLERK OF THE COURT
BY: PARAM NATT
Deputy Clerk

CASE MANAGEMENT CONFERENCE SET

APR - 8 2011  9:00 AM

DEPARTMENT 212

17              SUPERIOR COURT OF THE STATE OF CALIFORNIA

18                    FOR THE COUNTY OF SAN FRANCISCO

19 JAMES THOMAS LONG d/b/a JAMES      )  Case No. CGC - 10 - 505114
   THOMAS LONG PHOTOGRAPHY, on        )
20 behalf of himself and the proposed class;  )  **CLASS ACTION COMPLAINT**
                                       )
21         Plaintiff,                  )     1. **DECLARATORY RELIEF (CAL. CIV.**
                                       )        **PROC. § 1610);**
22     v.                              )
                                       )     2. **UNFAIR & DECEPTIVE BUSINESS**
23                                     )        **PRACTICES (CAL. BUS. & PROF. CODE**
   INGENIO, INC. d/b/a AT&T Interactive, a  )     **§§ 17200 ET SEQ.);**
24 corporation; and DOES 1-50,        )
                                       )     3. **FALSE ADVERTISING (CAL. BUS. &**
25         Defendants.                 )        **PROF. CODE §§ 17500 ET SEQ.); AND**
                                       )
26                                     )     4. **UNJUST ENRICHMENT**
                                       )
27                                     )  **DEMAND FOR JURY TRIAL**
                                       )
28

1

The above-captioned plaintiff alleges against the above-captioned defendants (referred to collectively in this Complaint as "Defendant" unless stated otherwise) as follows:

## SUMMARY OF THE ACTION

1.      Plaintiff James Thomas Long d/b/a James Thomas Long Photography ("Plaintiff"), brings this action, on behalf of himself and the other members of the proposed Class ("Class Members") against Defendant as a result of Defendant's illegal, unfair and deceptive business practices in the marketing, sale, and performance of advertising service.

2.      Defendant designed and operates technology that collects information about incoming calls to pre assigned telephone numbers. Defendant has incorporated this technology with advertising placement services that, at the time of filing, it calls the AT&T Interactive Pay Per Call Advertising Service (the "Service").

3.      Defendant's agents present the Service to "Mom and Pop" businesses such as florists, plumbers, and photographers in scripted telemarketing and door-to-door sales presentations. Defendant uniformly markets the Service as a unique performance-based advertising program that will maximize their advertising budget.

4.      Defendant offers to distribute targeted ads displaying the pre assigned telephone number for the small business client (the "Subscriber") through Defendant's purportedly unparalleled access to print, internet and mobile networks. Defendant uniformly represents that the Service generates high quality advertising results because the ads are targeted such that they reach local consumers searching for the particular goods or services sold by the Subscriber. Further, Defendant promises to charge the Subscriber on a per call basis "only when a new customer calls through your ad." Defendant refers to such calls interchangeably in marketing materials as "Successful Calls" or "Qualified Leads" and in its adhesion contract as "Chargeable Calls." Subscribers accept Defendant's offer by consenting to pay a fixed amount for each "Successful" or "Qualified" call that they receive through the Service.

5.      In reality, Defendant's service fails to operate as promised. Defendant's undisclosed written criteria for "Chargeable Calls" differs materially from Defendant's promise to only charge

the Subscriber when a new customer calls through it's ad. Defendant automatically charges Subscribers for "Junk Calls" such as telemarketing calls, fraudulent calls, calls that reach a busy signal or go unanswered, and calls from outside the Subscriber's service area.

6.    Subscribers could not reasonably expect to profit from Junk Calls. If Defendant had adequately disclosed the material facts concerning its unconscionable terms of use, the Subscribers would have rejected Defendant's offer or only accepted service at a substantially lower price. Nonetheless, Defendant, as a pattern and practice, refuses to cancel the Subscribers' Service, and continues to enforce its unconscionable terms by charging the Subscribers for Junk Calls.

## PARTIES

7.    Plaintiff James Thomas Long an individual d/b/a James Thomas Long Photography ("Plaintiff"), a sole proprietorship, is a California resident.

8.    Defendant Ingenio, Inc. ("Ingenio" or "Defendant") is a corporation incorporated under Delaware law with its headquarters and principal place of business in San Francisco, California. Ingenio developed the technology for and provides the advertising service that is the subject of the Complaint.

9.    Non party AT&T Inc. is a communications holding company incorporated in Delaware with its principal operations in Texas. AT&T Inc. claims that all communications services, including the services that form the basis of Plaintiff's claims, are provided through its subsidiaries.

10.    AT&T, Inc., identifies "AT&T Interactive" as its wholly-owned subsidiary with operations at 182 Howard Street, # 826 in San Francisco and also in Sunnyvale, California. As of the time of filing, Plaintiff's cannot identify AT&T Interactive as any registered legal entity separate and apart from Ingenio. On information and belief, Ingenio currently does business both under its own name and as "AT&T Interactive."

11.    The true names and capacities of Defendants sued as Does 1 through 50 are unknown to the Plaintiff at this time. Plaintiff therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of Does 1 through 50

when ascertained. Plaintiff is informed and believes, and based thereon alleges, that each Defendant is jointly and severally responsible in some manner for the damages alleged herein.

12.  At all relevant times, each Defendant was each an agent, servant, employee, partner and joint venturer of each of other Defendants. At all such times, each Defendant was acting within the course and scope of its relationship as agent, servant, employee, partner or joint venturer of each of the other Defendants, had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced in, and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

13.  Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to the Plaintiff, as alleged. In aiding and abetting and substantially assisting the commissions of these wrongful acts and other wrongdoings, each Defendant had actual knowledge of the wrongful acts and realized that its conduct would substantially assist the accomplishment of the wrongdoing.

14.  Each Defendant agreed to perform the alleged acts; all Defendants were direct, necessary, and substantial participants in the conspiracy, common enterprise, and common course of conduct complained of herein; and each Defendant was aware of its overall contribution to and furtherance of the conspiracy, common enterprise, and common course of conduct. Each Defendant's acts of conspiracy include, among other things, all of the acts that each Defendant is alleged to have committed in furtherance of the wrongful scheme.

15.  Each Defendant conducted the acts described herein with the affirmative intent to commit such illegal acts, knowing that the illegal acts would likely cause Plaintiff to sustain damages, by turning a "blind eye" towards such acts, and/or through other affirmative misconduct, oppression, fraud, malice, or calculated business decisions that Defendants knew or should have known to inevitably result in the violations triggering this lawsuit.

## JURISDICTION AND VENUE

16.  **Jurisdiction.** This Court has jurisdiction over this proposed class action under California law pursuant to Article VI, § 10 of the California Constitution, California Code of Civil

Procedure § 410.10, and California Business and Professions Code §§ 17203 and 17204.  Defendant is subject to the jurisdiction of this Court because Defendant maintains its headquarters and operations in California and conducts extensive business transactions here.  Plaintiff and each proposed Class Members' claims arise from Defendant's acts which emanated from California.

17.     Additionally, Defendant provides the services at issue from within the State of California and requires Plaintiff and each Class Member to adjudicate all disputes concerning its service agreement in the courts of the City and County of San Francisco.[1]

18.     The Court's exercise of jurisdiction over the parties comports with the traditional notions of fair play and substantial justice in accordance with the United States and California Constitutions.  This Court has personal jurisdiction over every Defendant in this action because a substantial number of the actions alleged in this Complaint occurred in California and this case arises from purposeful and intentional activities that Defendant knowingly directed at California and that affected the rights of California residents.

19.     **No Removal Jurisdiction.** Defendant has waived any potential rights to which it might otherwise have had to remove this action to federal court.  Defendant's adhesion contract which purports to govern the terms of its agreement with Plaintiff and each Class Member, expressly requires all disputes concerning the agreement to be "adjudicated in the courts of the City and County of San Francisco."[2]

20.     Additionally, the total amount in controversy as to the named Plaintiff is less than $75,000, including treble or punitive damages, interest, and costs.  Each member of the proposed class, as defined below, also asserts claims totaling less than $75,000 per person.  Neither Plaintiff nor any Class Member asserts any federal question.

---

[1] "Performance under this Agreement shall be deemed to take place in the State of California. This Agreement shall be governend by the laws of the State of California, excluding its conflicts of laws principles.  Any disputes arising from this Agreement shall be adjudicated in the courts of the City and County of San Francisco."  Exhibit 1: "Terms of Use" at ¶ 10; available online at: http://paypercall.attinteractive.com/documents/Help/Popup/Popup_MemberAgreement.asp (last visited on October 1, 2010 2:10 pm).

[2] *Id.*

21.    **Venue.** Venue is proper in this Court pursuant to California Code of Civil Procedure §§ 395 and 395.5 and California Business and Professions Code § 17203 because, among other things, Defendant resides in San Francisco, California. Defendant's obligations and liabilities in this matter resulted from its conduct here. The key events and acts giving rise to Plaintiff's and each Class Member's claims occurred in California. Additionally, much of the evidence and witnesses are located in San Francisco, California. The relative costs and burdens of maintaining this action in this Court outweigh any benefit of maintaining this case in any alternative forum. Finally, Defendant expressly selected this forum according to the terms of the adhesion contract that Defendant insists governs the service agreement.[3]

## CHOICE OF LAW

22.    California law applies to the resolution of this matter, including the determination of Plaintiff and each Class Member's claims, and any other rights of the respective parties, because Ingenio's adhesion contract states: "This Agreement shall be governed by the laws of the State of California, excluding its conflicts of laws principles."[4] Additionally, Ingenio does substantial business within California and the "nerve center" of its operations is in California. Ingenio's California operations include: actual performance of the Service; marketing, sales, and customer service operations; development of its business plan, and advertising scheme; and development and maintenance of Defendant's technology.

## FACTUAL ALLEGATIONS

### A.    Defendant's Service

23.    Defendant designed and operates technology that collects information about telephone calls made to designated telephone numbers ("Captive Numbers"). Defendant has packaged its technology with advertising services whereby Defendant or its agents produce and

---

[3] Any disputes arising from this Agreement shall be adjudicated in the courts of the City and County of San Francisco." Exhibit 1: "Terms of Use" at ¶ 10; also available online at: http://paypercall.attinteractive.com/documents/Help/Popup/Popup_MemberAgreement.asp (last visited on October 1, 2010 2:10 pm).

[4] *Id.*

distribute ads on behalf of a service subscriber ("Subscriber") that feature a Captive Number assigned to the particular Subscriber, so that Defendant may track calls made to the Captive Number.

24.     Defendant promises to charge the Subscriber for the "Successful Calls" from customers. This Service was initially known as "Ingenio Pay Per Call Advertising Service" until AT&T, Inc. agreed to purchase Ingenio in 2007.[5] Thereafter, the Service was packaged with AT&T, Inc.'s print, telephone and online advertising portfolio and rebranded as "AT&T Interactive Pay Per Call Advertising Service."[6]

25.     Defendant distributes its Subscribers' Captive Numbers through various online, print and mobile channels. Defendant does not provide Subscribers with a separate phone line for the Captive Number. Instead, calls to Captive Numbers are forwarded to Subscriber's operational telephone number.

26.     Defendant provides call reports to Subscribers that purport to present accurate information concerning each call through the Service. The reports describe: (a) the caller (by phone number, line type (i.e., landline or mobile), and city and state) (b) the call (whether the call connected, rang but went unanswered, or failed to connect due to a busy signal or service issue, ring duration, call duration) and (c) how Defendant has classified the call (call result, "Charged Call" (yes/no) Charge).

**B.     The Nature of Defendant's Marketing and Offer for Service**

27.     The nature of the Service is such that before using it, Subscribers must rely exclusively on Defendant's representations concerning the characteristics and quality of the Service.

---

[5] November 19, 2007, AT&T, Inc. press release; "*AT&T Agrees to Acquire Ingenio, a Pioneer and Leading Provider of Pay Per Call Search and Directory Solutions.*"

[6] The brands within AT&T, Inc.'s advertising portfolio include (or included) directory assistance and search services such as: YELLOWPAGES.COM; AT&T "Real Yellow Pages;" and 1-800-Yellow Pages.

No means for independent investigation were available to the Subscribers, and therefore all the information about the properties and benefits of the Service came from Defendant.[7]

28.    Defendant's uniform message to Subscribers is that the Service provides measurable value because Defendant tracks all calls to the Captive Number and only charges Subscribers for the calls from new customers:

**"See your ad here! Reach millions. Only pay for new customer calls."[8]**

29.    Defendant has spent considerable effort creating and testing a scripted marketing presentation for the Service. Defendant trains its sales agents in an intensive two week program where they must memorize the script, deliver mock presentations, and pass a performance evaluation.

30.    Defendant's scripted presentation to Subscribers reinforces Defendant's public messaging about the Service: "Only pay when new customers call you" but fails to adequately disclose the shortcomings of the Service and the one-sided material terms in Defendant's adhesion contract.

31.    Instead, Defendant presents the terms and benefits of the program's forecast of how many calls from customer the Subscriber will receive and how much revenue the Subscriber will generate as a reasonable means of determining the appropriate charge per call generated through the Service.

32.    Defendant and its agents are financially motivated to first hook potential Subscribers into accepting the offer for Service and then trick Subscribers into agreeing to an inflated price per call. Defendant's presentation is designed to, and does, create the reasonable expectation that Defendant's ad distribution network, proprietary technology and promise to charge only for "Successful Calls," "Qualified Leads," or "calls from new customers through your ad" will deliver

---

[7] On information and belief, Defendant does not promote the Service to sophisticated conusmers of advertising services such as advertising agencies or large corporations.

[8] *http://local.ingenio.com/Service/Ingenio-Pay-Per-Call-Advertising/6591500* (emphasis added) (last visited November 3, 2010.)

1  results.

2

3  33.  The sales representatives' compensation is heavily weighted toward commissions

4  tied to each subscription and must meet aggressive quotas or face termination. On information and

5  belief, about half the sales representatives are fired or quit each year.

6  34.  As a direct result of its deceptive practices, Subscribers agree to pay a high premium

7  for the Service as compared to "pay per click" marketing services.[9] If the Subscribers knew that

8  Defendant does not actually produce or charge only for "calls from new customers," they would not

9  have accepted Defendant's offer for Service or would not have agreed to pay such a premium.

10

## C.  Defendant's Service Fails to Operate as Promised

11

12  35.  Defendant's presentation creates the impression that Defendant's financial incentive

13  is aligned with the Subscriber. Specifically, Defendant represents that it will only charge for "calls

14  from new customers through the ad" and the Subscriber only wants to receive and be charged for

15  calls through the Service that generate new business.

16  36.  Undisclosed to the Subscribers at the time they accept the offer for Service are the

17  material facts concerning the limitations of the Service and the material terms of Defendant's

18  purported "Terms of Use" agreement that shift all the risk from Defendant to the Subscribers. In

19  actuality, the Service does not produce, and Defendant does not charge "only for calls from new

20  customers calling through the ad." Defendant's financial incentive is to inflate the overall number

21  of calls to the Captive Numbers, with little regard their likelihood to produce new business,

22  including inflating the number of Junk Calls.

23  37.  Defendant's agents increase the likelihood that Subscribers will receive Junk Calls in

24  a number of ways. They may disperse the Captive Numbers in untargeted advertisements

25  accompanied by little information about the Subscriber's goods and services. This results in an

26  increased likelihood that telemarketers will find and call the Captive Number, increases the number

27  ⁹ "Pay per click" services charge subscribers for clicks on hosted links that route web users to

28  subscribers' websites.

of calls for goods or services not offered by the Subscriber, and increases the number of calls from outside the Subscriber's service area or business hours.

38.     Defendant's inability to provide the Service as advertised and failure to present the limitations of the Service results in wrongful charges to the Subscribers.

39.     Recently, telemarketers have focused on business lines (such as the Captive Numbers), which are not eligible for the Do Not Call list.[10] Making matters worse, as one of Defendant's telecommunications partners points out—publishing business phone numbers in Internet or mobile directories makes them particularly easy targets.[11] "The influx of telemarketer calls today is not only annoying, it's a waste of time and money for businesses that advertise specific numbers on the Web and who pay for each call received through that number," said Sergio Alvarez, COO, AI Media Group. "And beyond the financial impact, these unwanted calls prevent businesses from providing superior customer service as well."[12]

40.     Defendant represents that it will only charge for calls generated by customers viewing the Subscriber's ad within the Subscriber's geographic service area.  In actual practice, neither the Pay Per Call technology nor Defendant's undisclosed criteria for "Qualified Leads" successfully filters out calls of that description. For instance, Defendant charges for calls from phone numbers outside of Subscriber's geographic service area, and for calls from blocked numbers that neither Defendant nor Subscribers could hope to geographically place. Finally, Defendant fails to provide an effective means for Subscribers to cancel service.

---

[10] "As companies have increasingly promoted their phone numbers in online and mobile channels, telemarketing firms have developed new ways to sweep the Web for potential targets."  Marchex Press Release, "MARCHEX HELP BUSINESSES BLOCK TELEMARKETING CALLS WITH NEW CALL ANALYTICS PRODUCT FEATURE NEW PATENT-PENDING TECHNOLOGY HELPS BUSINESSES SAVE TIME AND MONEY BY ELIMINATING UNWANTED CALLS FROM TELEMARKETERS AND AUTO-DIALERS" July 27, 2010 (Quoting Leigh McMillan, Senior Vice President and General Manager of Marchex Call Analytics)

[11] *Id.*

[12] *Id.*

41.    In some cases, Defendant's agents even boost a Subscriber's call volume (and their own financial quotas) by calling the Subscriber posing as a potential customer. Defendant is, or should be, aware of such conduct.

**D.    Defendant's Undisclosed Terms of Use Harm the Subscribers
By Allowing Defendant to Charge for Junk Calls**

42.    Defendant fails to provide the promised Service and has crafted the terms of its undisclosed written adhesion contract to transfer the risks and burdens related to the Service's deficiencies onto the Subscribers.

43.    In particular, at the time that Subscribers accept Defendant's offer for Service, Defendant uniformly fails to adequately disclose the criteria that determine whether a particular call will be classified as a "Chargeable Call." Defendant's "Chargeable Call" criteria contrasts sharply with its representations at the time of sale which uniformly promote the promise that Subscribers will "only pay when new customers calls through your ad." Defendant's automated system uniformly applies Defendant's one-sided terms to the detriment of the Subscribers.[13]

44.    When Class Members complain to Defendant about any aspect of Defendant's performance, Defendant routinely asserts the validity and enforceability of its adhesion contract. Among other things, Defendant asserts the validity and enforceability of the contract despite the fact that Defendant failed to provide the written contract, or adequate notice of its material terms, at the time that each Subscriber accepted Defendant's offer for service.

45.    "The terms, conditions, policies and guidelines . . . may be modified at any time by Ingenio in its sole and absolute discretion, with or without notice."[14]

---

[13] To the further detriment of the Subscribers, Defendant's automated system charges Subscribers for calls that it should not, even applying Defendant's unconscionable terms to the information contained in the report. For example, calls that originate outside the Subscriber's service geographic area are not "Chargeable" according to Defendant's criteria. Nonetheless, Defendant has charged Plaintiff for calls from area codes outside of Plaintiff's service area.

[14] Exhibit 1: "Terms of Use" at ¶ 10.

46. Defendant's positive disclosures concerning its service are misleading and deceptive particularly in light of Defendant's failure to disclose additional information that a reasonable person would consider material to the subscription agreement.

47. Defendant fails to inform Class Members about: (1) the inherent problems with the Service and (2) the one-sided terms in Defendant's adhesion contract, including its criteria for "Chargeable Calls."

48. Specifically, Defendant represents that subscribers will not be charged for every call transmitted through the Captive Number, but only for "Successful Calls." Subscribers reasonably base their perception of the value of the Service and of the price per "Successful Call" that the agree to at the time they accept Defendant's offer.

49. Defendant uniformly fails to disclose or inadequately discloses the criteria it actually uses to determine whether a particular call is a "Successful Call." The effect of Defendant's omissions concerning those criteria and the limitations of the Service is to artificially inflate the actual value of the Service.

**E.   Defendant Undisclosed Terms of Use Materially Differ From the Terms That Defendant Presented At the Time the Subscribers Accepted Defendant's Offer**

50. Defendant's Terms of Use circularly define a "Successful Call" as a call that Defendant determines, in its sole discretion, to be "Chargeable Call."

51. Other relevant adverse material facts unknown to Subscribers at the time they agree to pay for Defendant's service include that:

    a. Defendant lacks any meaningful ability to know whether a given call is from a customer who saw an ad or listing for the Subscriber placed by Defendant or from a telemarketer, a "wrong number," or from Defendant's own agents;

    b. Defendant automatically charges Subscribers the full agreed "Successful Call" amount regardless of whether the call is transmitted to a busy signal, unanswered, or sent to voicemail.

c.  Defendant maintains complete discretion with regard to placement of the Subscriber's listing within Defendant's own directory service and on its "partners'" websites;

d.  Defendant lack a reliable means of filtering out calls from outside the Subscriber's service area and charges for calls placed from "blocked," "unavailable," and "spoofed" phone numbers; and

e.  Defendant forwards calls made to Captive Numbers other than the number that Defendant indentifies as associated with the Subscriber.[15]

52.  In addition to enforcing the one-sided criteria for "Successful Calls," in some cases, Defendant charges Subscribers at the full "Successful Call" rate even though the call fails to meet its express criteria.

53.  Further, Defendant's Terms of Use do not allow Subscribers to mitigate the damages caused by the Junk Calls because Defendant neither waives charges for unanswered calls nor allows a sufficient period of time for Subscribers to answer and terminate Junk Calls without charge.

54.  Defendant refers to calls with a duration of 12 seconds or less as "Short Calls." Defendant does not charge for such calls to allow Subscribers time to discern whether or not an incoming call is a "Successful Call."

55.  12 seconds is an inadequate and unreasonable amount of time to properly answer an incoming business call, identify whether or not the call is a "Successful Call" and then, if not, terminate the conversation.

56.  On information and belief, Defendant has begun to alter the manner in which incoming calls presented to a Subscribers' caller ID service.  Subscribers with caller ID will now see their Captive Number displayed instead of the incoming caller's phone number (or "blocked," or "unavailable").

57.  Defendant trains its customer service representatives to refuse to cancel Class Members' subscriptions and to delay and transfer calls from unhappy Subscribers and to harass

---

[15] For example, on information and belief, Defendant forwards calls placed to Captive Numbers that Defendant has distributed in advertisements and directory listings featuring *other Subscribers'* information.

Subscribers who refuse to pay Defendant's unconscionable charges through repeated phone calls and threatening written collection notices.

58.     Plaintiff and Class Members would not have agreed to the Pay Per Call service or would have agreed to the service at a substantially reduced per call value, had they known the adverse facts that Defendant uniformly and intentionally, recklessly, or negligently conceals or fails to disclose. Presently, small business owners remain trapped in Defendant's purported advertising agreement and Defendant continues to charge them for Junk Calls.

### THE TRANSACTION BETWEEN DEFENDANT AND NAMED PLAINTIFF
### A. Defendant Falsely And Deceptively Presented the Nature and Terms of Service

59.     Plaintiff James Thomas Long ("Plaintiff") is a photographer and small business owner.

60.     In January 2010, Defendant's agent telephoned Plaintiff. The agent presented Defendant's scripted pitch for the Service. Defendant represented that as a Subscriber, Plaintiff would only pay for calls from new customers who called after reading about Plaintiff's services in print advertisements such as the Yellowpages or in online ads. Defendant's agent represented that Defendant would place Plaintiff's ad online through its partnerships with well-known Internet content and search providers such as Yahoo! and Google and that Plaintiff's ad would receive favorable search rankings and target local customers searching for the specific services that Plaintiff provided.

61.     Defendant's agent explained that Defendant would track the incoming calls and only bill for "Qualified Leads." The agent described Pay Per Call as a higher quality service compared with other advertising options because Defendant only charged for Qualified Leads. The agent also claimed Defendant has shown that its advertising network is more effective than competing services such as Google or Craigslist, and that consumers were more likely to actually make a purchase based on a "yellow pages" ad.

62.     Defendant conducted a scripted "return on investment" analysis to determine the appropriate price per Qualified Lead. Defendant described various subscription levels in Defendant's photography listings from the premium "Weddings" category at approximately $50 per

Qualified Lead to lower priced options for smaller, less prominent ads within less lucrative categories.

63.     Defendant's agent utilized Defendant's high pressure techniques, such as telling Plaintiff that the offer would be unavailable unless Plaintiff accepted Defendant's offer within a short period. Based on Defendant's representations, Plaintiff requested placement in Defendant's "Portrait" category which Defendant represented it would charge $31.00 per Qualified Lead. Defendant's agent then transferred Plaintiff to a third party who recorded Plaintiff's oral consent to the terms they had discussed, but failed to record any of the material misrepresentations and omissions that occurred by Defendant's agent in obtaining Plaintiff's oral consent.

64.     After Defendant began providing the Service, Plaintiff realized that the Service does not perform as represented.

65.     Defendant's failure to perform as promised has had a detrimental impact on Plaintiff's business.  Plaintiff spent time answering phone calls that could not generate business because Defendant placed untargeted ads that fail to include basic information concerning Plaintiff's business.

66.     Instead of the "Qualified Leads" Defendant promised, Plaintiff received many "Junk Calls." Plaintiff booked no business through Defendant's Pay Per Call ads, but instead wasted many hours answering the Junk Calls and attempting to have Defendant perform as promised, reverse its charges for the Junk Calls, and avoid further harm from future Junk Calls, by among other things, informing Defendant in writing that Plaintiff wished to cancel his subscription.

67.     The "Junk Calls" that Defendant charged Plaintiff for include:

- calls from people who dialed the wrong number;
- calls from outside Plaintiff's service area;
- calls requesting services other than those that Plaintiff provides or forwarded from another Subscriber's Captured Number;
- calls that Plaintiff did not answer;
- calls from "blocked," "unavailable" or "spoofed" numbers;

15

- telemarketing calls; and

- calls from Defendant's own agents.

**B. Despite Plaintiff's Repeated Complaints and Requests for Cancelation, Defendant Refuses to Correct Its Practices And Asserts That Plaintiff Agreed To An Adhesion Contract That Defendant Has Yet To Provide**

68.    Plaintiff spent substantial time and effort speaking with Defendant's service representatives who repeatedly denied Plaintiff's requests to rectify the situation by, among other things: (a) providing the undisclosed terms of Defendant's purported agreement in writing; (b) reversing the charges for "Junk Calls;" or (c) canceling Plaintiff's subscription as Plaintiff repeatedly requested to prevent further harm, including in writing.

69.    When Defendant refused to rectify the situation, Plaintiff attempted to mitigate his damages by correcting the content of the online advertisements that Defendant had placed on Yahoo! Local. However, Yahoo denied Plaintiff access to the ad due to its partnership with Defendant. In order to regain control of the online distribution of his business information, Plaintiff incurred the otherwise unnecessary expense of registering his business name as a service mark.

70.    Defendant has yet to cancel Plaintiff's service and, at the time of filing, continues to charge Plaintiff for Junk Calls.

## CLASS ACTION ALLEGATIONS

71.    Plaintiff brings this action on behalf of himself and all other similarly situated persons as members of a Class defined as follows:

**All persons Defendant charged for AT&T Interactive Pay Per Call Advertising Service.**

72.    Excluded from the Class are Defendant, any entity in which Defendant has or had a controlling interest, any officers or directors of Defendant, the legal representatives, heirs, successors, and assigns of Defendant, any judge assigned to this action and his or her immediate family, and any person whose individual claims exceed $75,000.

73.    This action has been brought and may be properly maintained pursuant to the provisions of California Code of Civil Procedure § 382.

74.   **Numerosity.**  Members of the Class are so numerous and widely dispersed that joinder of them in one action is impracticable.  Disposition of their claims in a class action will provide substantial benefits to both the parties and the Court.  Defendant is likely to have thousands of customers and promotes and markets its services throughout the State of California and the United States.  The precise number of Class Members and their addresses are unknown to Plaintiff, but each Class Member should be readily identifiable from information and records in Defendant's possession or control.  As a result, the Class is ascertainable and manageable.  Class Members may be notified of the pendency of this action by first-class or electronic mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.  This notice is properly paid for by Defendant.

75.   **Common Questions of Fact and Law.**  There is a well-defined community of interest in the questions of law and fact involved which affect the parties to be represented as the rights of each Class Member were violated in a similar fashion based upon Defendant's uniform actions.  The questions of law and fact common to the Class Members predominate over questions which may affect particular Class and Members, including the following:

    (a)   Whether Defendant's practice of charging Subscribers for Junk Calls is unconscionable under the circumstances alleged herein;

    (b)   Whether Defendant failed to disclose, intentionally failed to disclose, recklessly failed to disclose, and/or concealed material facts concerning the Service;

    (c)   Whether Defendant's uniform statements, including representations made in scripted presentations, promotional materials, advertisements, and on the Internet, regarding the Service were false, misleading, inaccurate or likely to deceive;

    (d)   Whether Defendant charged exorbitant costs to the Subscribers far beyond its actual costs in providing its service;

    (e)   Whether Defendant's business practices, as described herein, were unlawful, unfair, or fraudulent;

(f) Whether Defendant's business practices with regard to its debt collections practices are unfair or unlawful;

(g) Whether Plaintiff and Class Members are entitled to declaratory, injunctive and/or equitable relief, including disgorgement of profits unlawfully, unfairly or fraudulently obtained;

(h) Whether Plaintiff and Class Members are entitled to attorney's fees; and

(i) Whether Plaintiff and Sub-class members are entitled to actual damages.

76.   **Typicality.**  Plaintiff's claims are typical of the claims of the Class Members in that Plaintiff and all Class Members agreed to Defendant's Service.  Accordingly, they have no interests that are antagonistic to or which irreconcilably conflict with those of the other Class Members since the goal of each is to establish Defendant's liability to all Class Members.

77.   **Adequacy.**  Plaintiff will fairly and adequately protect the interests of the Class.  As alleged, Plaintiff has no adverse or antagonistic interests to those of the other Class Members. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

78.   **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The economic harm suffered by each individual Class Member may be limited.  Given the size of individual Class Members' claims, the expense and burden of individual litigation make it economically infeasible and procedurally impracticable for Class Members to seek redress individually for the wrongs done to them.  The likelihood of individual Class Members prosecuting separate claims is exceedingly remote, and even if the members of the Class could reasonably afford individual litigation, the court system could not. Individual litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.  By contrast, the class action device will present far fewer management difficulties, promote an orderly and expeditious administration and adjudication of the class claims, foster economies of scale, ensure uniformity of decisions, and provide comprehensive supervision by a single court.

79. In the alternative, the Class may be certified because:

(a) the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class Members which would establish incompatible standards of conduct for Defendant;

(b) the prosecution of separate actions by individual Class Member would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications or substantially impair or impede their ability to protect their interests; and

(c) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

80. Plaintiff and the Class have suffered irreparable harm or damages as a result of Defendant's unlawful and wrongful conduct. Absent a class action, Defendant will retain substantial funds received as a result of its wrongdoing and such unlawful and improper conduct will generally go uncorrected and therefore likely continue. Absent a class action, the members of the Class will not be able to effectively litigate these claims and will continue to suffer losses and allow these violations of law to proceed without remedy, allowing Defendant to largely retain the proceeds of its ill-gotten gains and continue such conduct with impunity.

### FIRST CAUSE OF ACTION

### Declaratory Relief

81. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

82. Plaintiff and Class Members desire a declaration of their rights with respect to Defendant.

83. Defendant asserts that Plaintiff and each Class Member entered into a valid agreement whereby Plaintiff and each Class Member would be obliged to pay Defendant in

exchange for Defendant's provision of "Qualified Leads" that Defendant would generate, track, and charge for, through the Service.

84.     Plaintiff asserts that Defendant uniformly mislead, failed to disclose, or inadequately disclosed material information concerning the Service including the actual capabilities of Defendant's technology and the material terms that Defendant enforces against each Subscriber. Had Plaintiff and each Class Member known such information at the time they accepted Defendant's provision of service, they would have refused Defendant's offer or would accepted only at a far lower charge per call. Plaintiff asserts that Defendant must provide its criteria for

85.     Plaintiff also asserts that Defendant's practice of charging for Junk Calls, such as those that only reach a busy signal, or go unanswered, and or originate outside of the Subscriber's geographic service area, is unfair and unconscionable. As a result, Defendant's criteria permitting charges for such calls are unenforceable and void as are Defendant's attempts to collect on charges for such calls.

86.     Defendant uniformly asserts the enforceability and validity of contractual terms against Plaintiff and Class Members, including terms that Defendant fails to disclose at the time Plaintiff and each Class Member agreed to pay Defendant for Service.

## SECOND CAUSE OF ACTION
### Violation of California Business & Professions Code Section 17200 *et seq.*

87.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

88.     Plaintiff and Class Members have suffered injury in fact and have lost money or property as a result of Defendant's actions as set forth above.

89.     **Unfair Business Practices.** Defendant's actions as alleged in this Complaint constitute "unfair" conduct within the meaning of California Business and Professions Code Sections 17200 *et seq.*

90. Defendant's business practices, as alleged herein, are "unfair" because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its subscribers.

91. Defendant's conduct is also "unfair" because Defendant represents that Subscribers will only be charged for calls from actual customers who have viewed the Subscriber's ad, but Defendant fails to disclose that it does not have the ability to determine whether a given call is from a customer who has actually viewed the Subscriber's ad or intends to purchase Subscriber's goods or services, rather than for example, a wrong number, a fraudulent call, or a solicitor.

92. Defendant's undisclosed or inadequately disclosed adhesion contract is procedurally unconscionable, for among other reasons, because Defendant fails to disclose the existence of, and material terms in the written adhesion contract at the time Subscribers accept Defendant's offer to provide Pay Per Call. Nonetheless, Defendant uniformly imposes its hidden terms against its Subscribers.

93. The terms of Defendant's adhesion contract are one-sided, oppressive, and adverse to the interests of Class Members in nearly every respect, and therefore substantively unconscionable.

94. As a result of Defendant's "unfair" conduct, Plaintiff and Class Members spent money that they would not otherwise have spent and received low quality calls that were worth substantially less than: (a) Defendant represented; and (b) Defendant charged Plaintiff and Class Members.

95. Defendant's alleged wrongful business practices constituted, and continue to constitute, a continuing course of unfair competition since Defendant continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

96. Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order of this court enjoining Defendant from continuing to engage in "unfair" business practices and any other act prohibited by law, including those acts set forth in this complaint.

97.     Plaintiff and the Class also seek an order requiring Defendant to make full restitution of all moneys wrongfully obtained from the Class, along with all other relief allowable under Business and Professions Code Section 17200 *et seq.*

98.     **Fraudulent Business Practices.** Defendant's actions as alleged in this complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code sections 17200 et seq.

99.     Defendant's business practices, as alleged herein, are "fraudulent" because they are likely to deceive consumers, including Plaintiff and Class Members.

100.    Defendant fails to disclose all material information to potential Subscribers concerning the information which their ads will display, the location of the ads, and affirmatively conceals the fact that ads will be displayed outside of the Subscriber's service area. Defendant fails to disclose to Subscribers that they have no way to exclude their ads from appearing on these sites. Defendant continues to fail to provide an effective and adequate method of excluding ads from these sites, or to adequately disclose that any method of excluding ads from these sites exists at all.

101.    As a result of Defendant's "fraudulent" conduct, Plaintiff and Class Members spent money that they would not otherwise have spent, and received telephone calls that were worth less than Defendant represented and less than Defendant charged Plaintiff and Class Members.

102.    Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since Defendant continues to market and sell its products in a manner that is likely to deceive.

103.    Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage in "fraudulent" business practices and other acts prohibited by law, including those acts set forth in this Complaint.

104.    Plaintiff and the Class also seek an order requiring Defendant to make full restitution of all moneys it has wrongfully obtained through the conduct alleged herein, along with all other relief allowable under Business and Professions Code Section 17200 et seq.

105.    **Unlawful Business Practices.**  Defendant's actions as alleged in this complaint constitute an "unlawful" practice because Defendant's actions are "unfair" and "fraudulent," as alleged above, and because they violate Business and Professions Code sections 17500 et seq., which proscribe false advertising, as alleged below.

106.    Defendant's conduct constitutes a breach of its duty of good faith and fair dealing.

107.    Defendant's imposition of charges for Junk Calls is an unreasonable penalty in violation Cal. Civ. Code § 1671.

108.    As a result of Defendant's "unlawful" conduct, Plaintiff and Class Members expended money that they would not otherwise have spent, and received low quality ad placements and calls that were worth: (a) less than Defendant represented; and (b) less than Defendant charged Plaintiff and Class Members.

109.    Pursuant to Business and Professions Code Section 17203, Plaintiff and the Class seek an order of this court enjoining Defendant from continuing to engage in unlawful business practices, including those acts set forth in this Complaint.

110.    Plaintiff and the Class also seek an order requiring Defendant to make full restitution of all moneys it has wrongfully obtained, along with all other relief allowable under Business and Professions Code Section 17200 *et seq.*

### THIRD CAUSE OF ACTION
#### False or Deceptive Advertising in Violation of California
#### Business & Professions Code Section 17500 *et seq.*

111.    Plaintiff brings this claim for relief on behalf of himself and the Class and realleges the preceding paragraphs as if fully set forth herein.

112.    Defendant engaged in advertising and marketing to the public and offered for sale advertising services on a nationwide basis, including in California.

113.    Defendant engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of advertising services to Subscribers like Plaintiff.

114.    Defendant's advertisements and marketing representations regarding the characteristics of its service, and the terms by which it determines charges for its service, were false,

misleading, and deceptive as set forth more fully above. Defendant knew, or should have known, that its statements were untrue or misleading.

115.     Plaintiffs seek restitution, injunctive relief, and all other relief allowable under Business and Professions Code Section 17500 *et seq.*

## FOURTH CAUSE OF ACTION
### Unjust Enrichment

116.     Plaintiff brings this claim for relief on behalf of himself and the Class and realleges the preceding paragraphs as if fully set forth herein.

117.     Through the actions described above, Defendant has received money belonging to the Class through fees collected from Junk Calls, which Subscribers had little or no reasonable opportunity to generate business, even though Defendant's representations would lead reasonable persons, including Subscribers, to believe that they would not be charged for such calls.

118.     Defendant has reaped substantial profit by collecting and retaining revenue from the Junk Calls.

119.     As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched.  Defendant should not be permitted to keep sums that Defendant has unjustly received as a result of its actions.

120.     Plaintiff and the Class pray for equitable relief in disgorgement of Defendant's ill-gotten revenue.

### DEMAND FOR JURY TRIAL

Plaintiff on behalf of himself, and the other Class Members, demands a jury trial on all claims so triable.

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendant as follows:

a.     Declaratory relief;

b.     Restitution and disgorgement of Defendant's ill-gotten gains;

c.     Compensatory damages;

d.      For attorneys' fees and costs;

e.      For prejudgment and post judgment interest; and

f.      For such other and further relief that the Court may deem just and proper.

DATED: November 4, 2010          **CONSUMER LAW PRACTICE**
                                 **OF DANIEL T. LEBEL**

Daniel T. LeBel
danlebel@consumerlawpractice.com
601 Van Ness Avenue,
Opera Plaza, Suite 2080
San Francisco, CA 94102
Telephone: (415) 513-1414
Facsimile: (877) 563-7848

Nancy Hersh
Charles Kelly
**HERSH + HERSH**
A PROFESSIONAL CORPORATION
601 Van Ness Avenue,
Opera Plaza, Suite 2080
San Francisco, CA 94102
Telephone: (415) 441-5544

Sheri L. Kelly, SBN 226993
**LAW OFFICE OF SHERI L. KELLY**
31 E. Julian Street
San Jose, CA 95112
Telephone: (408) 287-7712
Facsimile: (408) 583-4249

*Attorneys for Plaintiff and the proposed Class*

# EXHIBIT 1



Terms of Use for AT&T Interactive® Pay Per Call® Advertising Service

Effective April 2, 2009

The AT&T Interactive Pay Per Call Advertising Service (formerly known as the Ingenio Pay Per Call Advertising Service) (the "Service") is provided by Ingenio, Inc.

1. These terms of use are a binding legal agreement ("Agreement" or "Terms of Use") between you and Ingenio, Inc. ("Ingenio"). The terms "You" or "Your" or "Subscribing Advertiser" refers to the legal person or entity creating a Pay Per Call account with Ingenio, including without limitation you, the company or entity which You represent together with Your employees, agents, representatives or authorized third parties. Capitalized terms are also defined at the end of this Agreement. The terms and conditions which govern Your access and use of Pay Per Call services (individually and collectively "Services") are as follows:

2. You may access Services subject to all of the terms and conditions set forth herein as well as the rules, policies and guidelines found at http://paypercall.attinteractive.com, all of which are hereby incorporated herein by this reference as part of this Agreement, including without limitation the Price Per Call rules, the Pay Per Call Advertising Service bidding process and the Privacy Policy. The terms, conditions, policies and guidelines set forth herein or incorporated herein by reference are collectively referred to in this Agreement as "Terms and Policies" and may be modified at any time by Ingenio in its sole and absolute discretion, with or without notice. If after modification the Terms and Policies are no longer acceptable to You, Your only recourse is to terminate Your use of Services. However, if You continue to use Services after the effective date of any modifications to these Terms and Policies, Your use will constitute agreement to and acceptance of the Terms and Policies and You will be bound by the Terms and Policies, as modified. In order to access and use Services You must be at least eighteen (18) years old and capable of entering a binding contract under applicable law. Upon request of Ingenio, you shall provide us with verification of Your age, identity and other personal identifiable information. You shall not use Services in a country where You are prohibited from using such services.

3. You are solely responsible for Your Advertising content, and shall exercise caution, discretion, and judgment in using the Services and Advertising Network. Although the Services help Subscribing Advertisers and Calling Customers connect with one another, Ingenio does not monitor any information exchanged, and, as a result, does not control, nor is responsible for the truth, accuracy, completeness, safety, timeliness, quality, appropriateness, legality or applicability of anything said, depicted or written by Subscribing Advertisers or Calling Customers, including without limitation any information obtained in connection with the Services.

4. (a) Ingenio reserves the right, in its sole and absolute discretion, at any time and for any reason or no reason, to suspend or terminate this Agreement or Your access to or use of the Services or Advertising Network with or without prior notice, or modify the terms and conditions which govern Your use of or access to the Services or Advertising Network, with or without prior notice. Notwithstanding the foregoing, changes to the Successful Call Fees and any Listing Fees or other charges are effective thirty (30) days after notice is provided to Subscribing Advertisers by an e-mail message sent to the e-mail address listed for Your account.

(b) Ingenio may notify Your bank and/or governmental authorities, as applicable, or take any appropriate actions without notice to You if Ingenio (i) suspects that You have failed to comply with any provision of these Terms of Use or any policies established by Ingenio; (ii) is unable to verify or authenticate any billing or payment information You provide; or (iii) suspects that You may be misusing the Services or that Your actions may be illegal or cause liability, harm or disruption for You, Ingenio, the Services or the Advertising Network. You have the right to cancel Your Pay Per Call Advertisement at any time by either (i) completing the Customer Support Form and selecting "Cancel My Account" in the subject line, or (ii) logging into Your Subscribing Advertiser account and following the instructions for cancellation of either a Pay Per Call Advertisement or Your membership as a Subscribing Advertiser. Any suspension, termination or cancellation shall not affect Your obligation to pay any amounts due to Ingenio or Ingenio's affiliates or partners, as applicable, under these Terms of Use.

5. (a) You are solely responsible for all use made of the Services and Advertising Network under Your Pay Per Call Advertisement and Subscribing Advertiser account and agree to pay to Ingenio (or its affiliates and/or partners as applicable) the Successful Call Fees, Listing Fees and other charges. Information relating to the Successful Call Fees, Listing Fees and other charges which apply to You is set forth in Your account and/or the "Price Per Call" section of the "Create Ad" process, or as otherwise set forth in http://paypercall.attinteractive.com, as modified from time to time. You agree to deposit money from your credit or debit card into Your account as a means to pay the applicable Successful Call Fees, Listing Fees and other charges.

(b) You agree to pay all charges to Your account, including all applicable Successful Call Fees, Listing Fees, other charges, and any and all applicable taxes, all in accordance with Ingenio's instructions. You understand that the number of Successful Calls is measured by tracking reports prepared by Ingenio and You understand and agree that such reports shall be the only and definitive measure of the number of Successful Calls. You acknowledge that Your payment obligation for Successful Call Fees hereunder is based solely on the number of Successful Calls and not on Your ability to convert Successful Calls to sales, or other business relationships and agree that Ingenio shall not have any liability for Your ability or inability to convert Successful Calls to sales or other business relationships. Furthermore, Ingenio shall not be liable for any invalid or fraudulent call activity or any activity of any Calling Customer in connection with Your Pay Per Call Advertisement whether or not such activity results in a Successful Call.

(c) In order for Your Pay Per Call Advertisement to be displayed, You must have funds in Your account that are equal to, or greater than, the Pay Per Call Advertisements' current bid prices. If Your account does not have sufficient funds then your Pay Per Call Advertisements will not be displayed by Ingenio. In the event that You have elected to pay Ingenio or its affiliates and/or

partners as applicable, by credit or debit card and have selected the Auto-Deposit feature, you agree that Ingenio may charge the credit or debit card for the pre-determined amount set by You, when Your account balance is not equal to, or greater than, the Pay Per Call Advertisements' current bid prices. You represent that all payment information provided to Ingenio is accurate and complete and further that any and all persons authorized to act on Your behalf or on behalf of Your company or entity (as applicable) is also an authorized user of the credit or debit card provided by You for payment for the Services. You authorize Ingenio, directly or through third parties, to make any inquiries Ingenio considers necessary to validate Your Subscribing Advertiser account and/or Pay Per Call Advertisement information. This may include ordering a credit report and performing other credit checks or otherwise verifying the information You provide.

(d) In the event that Ingenio (or its affiliates and/or partners as applicable) is unable to charge a Subscribing Advertiser's credit or debit card or a check issued by a Subscribing Advertiser is returned, or You do not pay Ingenio (or its affiliates and/or partners as applicable) the fees due under these Terms of Use, Ingenio may, in its sole discretion and in addition to any other remedies available to it under these Terms of Use and any and all applicable laws, suspend or terminate the Subscribing Advertiser's Pay Per Call Advertisements. Subscribing Advertiser shall be responsible for the payment of any and all charges and/or fees incurred by Ingenio or its affiliates and/or partners as applicable, as a result of any chargeback or dishonored check. If Subscribing Advertiser believes any claim or dispute exists with respect to any charges or fees incurred by Subscribing Advertiser pursuant to these Terms of Use, Subscribing Advertiser shall notify Ingenio in writing no more than thirty (30) days following charging by Ingenio or its affiliates and/or partners as applicable, to Subscribing Advertiser's credit or debit card, or after the date of Ingenio's invoice (or the invoice of its affiliates and/or partners as applicable), as applicable. Subscribing Advertiser's failure to notify Ingenio of any claim or dispute within such thirty (30) day period shall result in the waiver of any such claim or dispute by Subscribing Advertiser and such charges or fees shall become final. Upon receipt of notice as described above, Ingenio will take whatever action, in its sole discretion, it deems appropriate. Refunds (if any) are at the discretion of Ingenio. If You fail to make payments as set forth herein, You will be responsible for all reasonable expenses (including collection expenses, attorneys' fees and court costs) incurred by Ingenio in collecting such payment amounts.

(e) You agree to maintain the confidentiality of Your account password and Subscribing Advertiser account information and to supervise all activities that occur under Your account. Ingenio is not responsible for any loss that You may incur as a result of any unauthorized person using Your account or password. You agree that Ingenio may use information provided by You as described in the Ingenio Pay Per Call Privacy Policy.

6. (a) For purposes of this Agreement Ingenio Pay Per Call's Advertising Service includes a bidding process whereby Subscribing Advertisers wishing to advertise their services or products through a Pay Per Call Advertisement, bid for placement of a category advertisement to appear in the results or listings generated by Ingenio, its affiliates and/or partners, as applicable, in response to search-, browse- or contextually-driven category queries, prompts, commands or requests. You understand that Your category advertisements shall be served in response to queries on categories that You have bid on as well as different misspellings, singular and/or

plural variations, or other related categories or phrases, visual items or audio items that Ingenio, its affiliates and/or partners, as applicable, in its sole and absolute discretion may map to Your category advertisements. For example, Ingenio, its affiliates and/or partners, as applicable, may serve category advertisements for the category "plumbing" in response to category queries such as "sink blockage", "sink blockages", "sinks blockage". Final decision as to inclusion and/or placement of Your Pay Per Call Advertisement, relevancy of the category and/or keyword designations, and the like is at Ingenio's sole and absolute discretion. You agree that Ingenio shall not have any liability for (i) search-, browse- or contextually-driven category query, prompt, command or request performance, category or keyword designation or relevancy related to Your Pay Per Call Advertisements, or (ii) any changes You make to Your Pay Per Call Advertisements.

(b) The amount of a Subscribing Advertiser's bid determines placement of such Subscribing Advertiser's category advertisement in the results list. Ingenio, its affiliates and/or partners, as applicable, continually update placement based upon the ongoing results of the bids for placement. You understand that there is no promise by Ingenio that Your category advertisements shall be available, displayed or appear in a particular position or rank and You understand that Ingenio, its affiliates and/or partners, as applicable reserve the right to not place Your category advertisements within any search results list generated in connection with their respective websites. Certain account management services relating to the Pay Per Call Advertisements bids may be made available to You at Ingenio's sole discretion. The format of Your category advertisement may vary and Ingenio, its affiliates and/or partners, as applicable, make no representations as to the format of Your category advertisement, e.g., a category advertisement that is displayed through Ingenio, its affiliates and/or partners may include a truncated category advertisement title or category advertisement description. In all cases information for the category advertisement must be submitted in the form requested by Ingenio. Ingenio reserves the right to make non-material, minor clerical and/or administrative edits to such information to ensure conformity with any formatting requirements, including but not limited to removing or adding an extra space, fixing spelling errors and assigning relevant category and keyword designations to Your Pay Per Call Advertisement. Notwithstanding the foregoing, in the event that Ingenio does not make any changes to Your Pay Per Call Advertisement as submitted by You or on Your behalf, and such Pay Per Call Advertisement is included in the Advertising Network, Ingenio shall bear no liability whatsoever for such Pay Per Call Advertisement. However, in the event that Ingenio does exercise its right to make non-material, minor clerical and/or administrative edits, Ingenio also shall not bear any liability for such Pay Per Call Advertisement.

(c) As part of the Pay Per Call Advertising Service, You can bid on a Trademarked Category. Bids by You on a Trademarked Category shall not be made by You if the category includes a trademark which is not owned by You, unless You are a reseller of goods or services of the trademark owner and have the right to use the trademark, or are otherwise able to bid on and use the Trademarked Category without infringing on or violating the rights of another.

(d) In connection with Your use of Ingenio Services You shall not, and shall not authorize any person to (i) use Ingenio Services for fraudulent, misleading, deceptive, unfair or illegal business practices (ii) violate or encourage violation of any laws or regulations in any state or country

where Your Pay Per Call Advertisements are created, displayed or accessed (iii) violate the privacy rights or publicity rights of any third party, (iv) violate the copyright, patents, trademarks or trade secrets of any third party, (v) "frame," "mirror" or otherwise copy any portion of the Services or Advertising Network without the express written authorization of Ingenio (vi) use the Services for any kind of gambling or lottery activities or the placement of bets or (vii) allow Your Pay Per Call Advertisements to contain links to any website of Yours or websites of any third parties including without, limitation, any of Your affiliates or business partners.

(e) You shall provide true, accurate and complete registration information and shall maintain it as current and shall promptly update Your personal contact information that You provide to Ingenio, as applicable. You shall not use false identities or impersonate any other person or use a name that You are not authorized to use.

(f) You authorize Ingenio to redirect a call made by a Calling Customer from a Customer Call-In Number to a telephone number You specify in the registration process. The telephone number You specify must be a telephone number within the United States or Canada. Ingenio does not redirect calls to telephone numbers outside of the United States and Canada. You shall use the Services only for the purposes for which they are intended - as an advertising service and not a telecommunications service - and not as a free or discounted long distance, local or toll-free telephone number. You also authorize Ingenio to replace Your telephone number on Your website (including without limitation by use of a Mirrored Site or other place to which Ingenio links in its discretion) with a Customer Call-In Number when Calling Customers are directed to Your website through a link in an Active Listing. You acknowledge, agree and accept that (i) the Services may be provided to You by Ingenio or its affiliates or its third party business partners and that Your Pay Per Call Advertisements may be included on the websites, advertising networks and ad media of such affiliates or third party business partners, in addition to, or instead of, those websites, ad media and advertising networks of Ingenio, (ii) there is no guarantee that Your Pay Per Call Advertisements will be included on the Advertising Network or on the website, ad media or advertising network of an Ingenio business partner, and Ingenio and its business partners bear no liability relating to such exclusion and (iii) Ingenio is authorized by You to modify Your listing content or written text so that it can be distributed in multiple media forms by Ingenio and its distribution affiliates and partners, including without limitation audio or video. Ingenio reserves the right, in its sole and absolute discretion, to reject or remove any Pay Per Call Advertisement it deems unsuitable for the Services.

(g) All Pay Per Call Advertisements, search terms and descriptions are subject to Ingenio's approval. Final decision as to inclusion and/or placement of Your Pay Per Call Advertisement, relevancy of the category and/or keyword designations, and the like is at Ingenio's sole and absolute discretion. Ingenio reserves the right, at any time, to reject, suspend, cancel or remove Your Subscribing Advertiser account, any Pay Per Call Advertisement, search terms, descriptions and bids, to make non-material, minor clerical and administrative edits to any Pay Per Call Advertisement, search terms, descriptions and bids, to assign new category and keyword designations to any Pay Per Call Advertisement, and to refuse to provide You access to the Services or Advertising Network without notice to You and for any reason or no reason whatsoever, and Ingenio, its employees, consultants and other agents shall have no liability for taking (or not taking) such actions or decisions.

7. You, as a Subscribing Advertiser represent and warrant that You hold all necessary right, title and interest to any information or materials used in Your Pay Per Call Advertisements. You also represent and warrant that You will not violate the intellectual property rights, publicity rights or rights of privacy of any third party in connection with Your use of the Services. You also represent that You will not use Ingenio's Services for any form of adult entertainment or adult oriented services. In connection with Your use of the Services or Advertising Network, You hereby grant Ingenio, its distribution partners and third-party services providers the right to use, copy, distribute, display or reference (i) all keywords, categories, phrases, information, content and any materials submitted by You to Ingenio as part of Your Pay Per Call Advertisement, whether created by or for You, and (ii) all text, graphic, audiovisual and other content served to Calling Customers in a Pay Per Call Advertisement that is not provided by Ingenio (collectively, "Creative Content"). Excluding Your Creative Content, Ingenio shall own all right, title and interest, including without limitation all intellectual property rights and all improvements thereto and derivative works or enhancements thereof, relating to the Services and the Advertising Network, including but not limited to all information, content, materials, URLs and Customer Call-In Numbers that Ingenio may assign or provide to You. Excluding Your Creative Content, You shall and hereby do assign to Ingenio all right, title and interest in and to any part of the Services and/or the Advertising Network that You may have or acquire. You hereby grant Ingenio, its distribution partners and third-party services providers the right to use, copy, distribute, display or reference the information contained in Your Pay Per Call Advertisement in the Services, in the Advertising Network and elsewhere to promote the Services and Advertising Network without Your consent or compensation to You. Any rights not expressly granted herein are deemed withheld.

8. (a) THE SERVICES AND ADVERTISING NETWORK ARE PROVIDED "AS IS" WITH NO WARRANTY OF ANY KIND. Ingenio AND ITS SUPPLIERS, AFFILIATES AND PARTNERS (INCLUDING, BUT NOT LIMITED TO ANY THIRD PARTIES PROMOTING THE ADVERTISING NETWORK) EXPRESSLY DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE SERVICES, ADVERTISING NETWORK AND ALL COMMUNICATIONS BETWEEN SUBSCRIBING ADVERTISERS AND CALLING CUSTOMERS MADE THROUGH THE SERVICES OR ADVERTISING NETWORK, INCLUDING ANY IMPLIED WARRANTY OF QUALITY, AVAILABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT. IN ADDITION, Ingenio AND ITS SUPPLIERS, AFFILIATES AND PARTNERS MAKE NO REPRESENTATION OR WARRANTY THAT THE CONTENT OR OPERATION OF THE SERVICES OR ADVERTISING NETWORK SHALL BE ERROR FREE. Some states do not allow the exclusion of warranty, so the above exclusions may not apply to You.

(b) Subscribing Advertiser agrees to indemnify, defend and hold Ingenio, its affiliates, partners, officers, directors, employees, representatives, consultants and other agents harmless from and against any losses, costs, damages or expenses (including reasonable attorneys' fees) resulting from claims or actions arising out of or in connection with Subscribing Advertiser's Pay Per Call Advertisements or website (including without limitation, the website content), Subscribing Advertiser's use of the Services or the Advertising Network, Subscribing Advertiser's

communications with Calling Customers and Subscribing Advertiser's representations or warranties hereunder, including, without limitation, third party claims for infringement of patent, copyright, trademark or other intellectual property rights and violation of rights of privacy, publicity and property. You further agree that Ingenio shall have the right, in its sole discretion, to select its own legal counsel to defend Ingenio from any such claim and that You shall be solely responsible for the payment of all Ingenio's reasonable attorneys' fees incurred in connection therewith. You agree that any proposed settlement or resolution of any claim (whether having been finally adjudicated or otherwise) brought against You, Your company or the entity You represent, or Ingenio that is subject to Your indemnification obligations set forth herein shall be subject to the prior written approval of Ingenio, in its sole discretion, if such settlement or resolution results in any further obligation or liability for Ingenio.

(c) UNDER NO CIRCUMSTANCES SHALL INGENIO OR ITS SUPPLIERS, AFFILIATES AND PARTNERS (INCLUDING, BUT NOT LIMITED TO ANY THIRD PARTIES PROMOTING THE ADVERTISING NETWORK) BE LIABLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES ARISING OUT OF OR IN CONNECTION WITH USE OF THE SERVICES, ADVERTISING NETWORK OR COMMUNICATIONS BETWEEN SUBSCRIBING ADVERTISERS AND CALLING CUSTOMERS MADE THROUGH THE SERVICES OR ADVERTISING NETWORK, WHETHER THE DAMAGES ARE FORESEEABLE AND WHETHER OR NOT INGENIO HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING INGENIO'S AGGREGATE LIABILITY TO YOU ARISING WITH RESPECT TO THESE TERMS OF USE SHALL NOT EXCEED THE TOTAL FEES ACTUALLY PAID BY YOU UNDER THESE TERMS OF USE IN THE SIX (6) MONTH PERIOD PRIOR TO THE CLAIM GIVING RISE TO LIABILITY. INGENIO SHALL NOT BE LIABLE FOR THE CONSEQUENCES OF ANY INTERRUPTIONS OR ERRORS. Some states do not allow the exclusion or limitation of incidental or consequential damages, so the above limitation and exclusions may not apply to You.

9. You consent to the use of electronic means to complete this Agreement and to provide You with any notices related to this Agreement. You also consent to the use of electronic records to store information related to this Agreement and Your use of the Ingenio Services. You can request a copy in paper form of these Terms of Use and any other records relating to these Terms of Use or Your use of the Services and Advertising Network by sending a written request to our mailing address: Ingenio, Inc., 182 Howard Street #826, San Francisco, CA 94105.

10. Under no circumstances shall Ingenio, its parent company, agents, affiliates, suppliers and partners be liable for any delay or failure in performance of Ingenio Services resulting directly or indirectly from forces, causes or matters beyond its reasonable control. Performance under this Agreement shall be deemed to take place in the State of California. This Agreement shall be governed by the laws of the State of California, excluding its conflicts of laws principles. Any disputes arising from this Agreement shall be adjudicated in the courts of the City and County of San Francisco. You may not assign this Agreement or any of Your rights or obligations herein, and any attempt to do so is void. Any amendments or modifications by You must be in writing and signed by Ingenio to be valid. If any provision is invalid or unenforceable with respect to a

party, the remainder of the Agreement, or the application of such provision to persons other than those to whom it is held invalid or unenforceable shall not be affected and each remaining provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law. No waivers shall occur unless in writing. The waiver of any default shall not be a waiver of any subsequent default. Sections 5, 6, 7, 8 and 10 as well as terms and conditions of this Agreement which by their express language or by their sense and context survive the termination or cancellation of this Agreement will so survive. This Agreement together with the Terms and Policies constitute the entire agreement between You and Ingenio with respect to the subject matter contained herein.

Definitions.

"Advertising Network" means the Web-based reference service that lists Subscribing Advertiser names, and other descriptive information about Subscribing Advertisers, which may be promoted by Ingenio on both Ingenio's websites and the websites of Ingenio's affiliates and partners.

"Active Listing" means a Pay Per Call Advertisement set up by a Subscribing Advertiser with an account in good standing that has been approved by Ingenio and activated on the applicable website.

"ANI" means Automatic Number Identification for telephone numbers from which Calling Customers make Successful Calls.

"Calling Customer" means an individual, sourced by Ingenio or Ingenio's third party distributors, through marketing and distribution efforts, who initiates a call from a Subscribing Advertiser's Pay Per Call Advertisement.

"Charged Call(s)" means a call that is charged pursuant to the Ingenio Pay Per Call business rules, as may be modified from time to time.

"Customer Call-in Number" shall mean a unique local, long distance or toll-free phone number or extension, or click to call mechanism assigned by Ingenio to a Subscribing Advertiser.

"Mirrored Site" means a mirrored version of the Subscribing Advertiser's website created by Ingenio with the same look and feel as the Subscribing Advertiser's website with a URL visible above the mirrored version of the site showing the web site address for the mirrored version of the site and not that of the Subscribing Advertiser's website.

"Pay Per Call Advertising Service" means an information service provided by Ingenio to Subscribing Advertisers, under which Subscribing Advertisers pay a Successful Call Fee for each call received from a Customer Call-In Number.

"Listing Fee" means an annual fee payable by Subscribing Advertisers to Ingenio for each Pay Per Call Advertisement created in the Advertising Network that is an Active Listing.

"Pay Per Call Advertisement" comprises the Required Data, Customer Call-In Number and other

descriptive information of a Subscribing Advertiser listed as part of the Ingenio Pay Per Call Advertising Service, including details about the Subscribing Advertiser's services.

"Required Data" means a Subscribing Advertiser's name, phone number(s), email address, mailing address, phone number to which the Customer Call-In Number should forward, billing information and advertising category.

"Subscribing Advertiser" means an advertiser that elects to sign up to the Advertising Network to advertise its products and service using the Service.

"Successful Call Fee" means the fee generated by a Successful Call made by a Calling Customer to a Subscribing Advertiser's Customer Call-In Number.

"Successful Call" means a Charged Call from a Calling Customer through the Customer Call-In Number that is transmitted, and charged for, by Ingenio, regardless of whether the call is transmitted to a busy signal, is unanswered or a connection is made to a live person or to voicemail or other voice or audio mechanism or other media.

"Trademarked Category" means a listing category which uses a trademark.

# Alternative Dispute Resolution (ADR) Program Information Package

# Alternatives to Trial

## There are other ways to resolve a civil dispute.

The plaintiff must serve a copy of the ADR information package
on each defendant along with the complaint.  (CRC 3.221(c))



**Superior Court of California
County of San Francisco**

# Introduction

**Did you know that most civil lawsuits settle without a trial?**

**And did you know that there are a number of ways to resolve civil disputes without having to sue somebody?**

**These alternatives to a lawsuit are known as alternative dispute resolutions (ADR). The most common forms of ADR are mediation, arbitration and case evaluation. There are a number of other kinds of ADR as well.**

**In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. For example, in mediation, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.**

**ADR is not new. ADR is available in many communities through dispute resolution programs and private neutrals.**

# Advantages of ADR

**ADR can have a number of advantages over a lawsuit.**

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- **ADR can save money.** Court costs, attorneys fees, and expert fees can be saved.

- **ADR can be cooperative.** This means that the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- **ADR can reduce stress.** There are fewer, if any, court appearances. And because ADR can be speedier, and save money, and because the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads for years.

- **ADR encourages participation.** The parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- **ADR is flexible.** The parties can choose the ADR process that is best for them. For example, in mediation the parties may decide how to resolve their dispute.

- **ADR can be more satisfying.** For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute, instead of filing a lawsuit. Even when a lawsuit has been filed, the court can refer the dispute to a neutral before the parties' position harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

## Disadvantages of ADR

ADR may not be suitable for every dispute.

- If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

- There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

- The neutral may charge a fee for his or her services.

- If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

- Lawsuits must be brought within specified periods of time, known as statutes of limitation. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

# ALTERNATIVE DISPUTE RESOLUTION PROGRAMS
## Of the San Francisco Superior Court

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to a mandatory settlement conference or trial." (Superior Court Local Rule 4)

This guide is designed to assist attorneys, their clients and self-represented litigants in complying with San Francisco Superior Court's alternative dispute resolution ("ADR") policy.  Attorneys are encouraged to share this guide with clients.  By making informed choices about dispute resolution alternatives, attorneys, their clients and self-represented litigants may achieve a more satisfying resolution of civil disputes.

The San Francisco Superior Court currently offers three ADR programs for general civil matters; each program is described below:

1)    Judicial Arbitration
2)    Mediation
3)    The Early Settlement Program (ESP) in conjunction with the San Francisco Bar Association.

## JUDICIAL ARBITRATION

### Description

In arbitration, a neutral "arbitrator" presides at a hearing where the parties present evidence through exhibits and testimony.  The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.  When the Court orders a case to arbitration it is called judicial arbitration.  The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.

Although not currently a part of the Court's ADR program, civil disputes may also be resolved through private arbitration.  Here, the parties

voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## *Operation*

Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the Court's Arbitration Panel. Most cases ordered to arbitration are also ordered to a pre-arbitration settlement conference. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a court trial within 30 days after the arbitrator's award has been filed.

## *Cost*

There is no cost to the parties for judicial arbitration or for the pre-arbitration settlement conference.

## MEDIATION

## *Description*

Mediation is a voluntary, flexible, and confidential process in which a neutral third party "mediator" facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of the dispute after exploring the significant interests, needs, and priorities of the parties in light of relevant evidence and the law.

Although there are different styles and approaches to mediation, most mediations begin with presentations of each side's view of the case. The mediator's role is to assist the parties in communicating with each other, expressing their interests, understanding the interests of opposing parties, recognizing areas of agreement and generating options for resolution. Through questions, the mediator aids each party in assessing the strengths and weaknesses of their position.

A mediator does not propose a judgment or provide an evaluation of the merits and value of the case.  Many attorneys and litigants find that mediation's emphasis on cooperative dispute resolution produces more satisfactory and enduring resolutions.  Mediation's non-adversarial approach is particularly effective in disputes in which the parties have a continuing relationship, where there are multiple parties, where equitable relief is sought, or where strong personal feelings exist.

## Operation

San Francisco Superior Court Local Court Rule 4 **provides three different voluntary mediation programs** for civil disputes.  An appropriate program is available for all civil cases, regardless of the type of action or type of relief sought.

To help litigants and attorneys identify qualified mediators, the Superior Court maintains a list of mediation providers whose training and experience have been reviewed and approved by the Court. The list of court approved mediation providers can be found at www.sfgov.org/courts.   Litigants are not limited to mediators on the court list and may select any mediator agreed upon by all parties.  A mediation provider need not be an attorney.

Local Rule 4.2 D allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate within 240 days from the date the complaint is filed.  If settlement is not reached through mediation, a case proceeds to trial as scheduled.

## Private Mediation

The Private Mediation program accommodates cases that wish to participate in private mediation to fulfill the court's alternative dispute resolution requirement. The parties select a mediator, panel of mediators or mediation program of their choice to conduct the mediation.  The cost of mediation is borne by the parties equally unless the parties agree otherwise.

Parties in civil cases that have not been ordered to arbitration may consent to private mediation at any point before trial.  Parties willing to submit a matter to private mediation should indicate this preference on the Stipulation to Alternative Dispute Resolution form or the Case Management Statement (CM-110).  Both forms are attached to this packet.

### Mediation Services of the Bar Association of San Francisco

The Mediation Services is a coordinated effort of the San Francisco Superior Court and The Bar Association of San Francisco (BASF) in which a court approved mediator provides three hours of mediation at no charge to the parties. It is designed to afford civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint, in an effort to resolve the matter before substantial funds are expended on the litigation process. Although the goal of the program is to provide the service at the outset of the litigation, the program may be utilized at anytime throughout the litigation process.

The mediators participating in the program have been pre-approved by BASF pursuant to strict educational and experience requirements.

After the filing of the signed Stipulation to Alternative Dispute Resolution form included in this ADR package the parties will be contacted by BASF. Upon payment of the $250 per party administration fee, parties select a specific mediator from the list of approved mediation providers or BASF will help them select an appropriate mediator for the matter. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waiver of the administrative fee based on financial hardship is available.

A copy of the Mediation Services rules can be found on the BASF website at www.sfbar.org/mediation or you may call BASF at 415-982-1600.

### Judicial Mediation

The Judicial Mediation program is designed to provide early mediation of complex cases by volunteer judges of the San Francisco Superior Court. Cases considered for the program include construction defect, employment discrimination, professional malpractice, insurance coverage, toxic torts and industrial accidents.

Parties interested in judicial mediation should file the Stipulation to Alternative Dispute Resolution form attached to this packet indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court Alternative Dispute Resolution Coordinator will coordinate assignment of cases that qualify for the program.

## Cost

Generally, the cost of Private Mediation ranges from $100 per hour to $800 per hour and is shared equally by the parties. Many mediators are willing to adjust their fees depending upon the income and resources of the parties. Any party who meets certain eligibility requirements may ask the court to appoint a mediator to serve at no cost to the parties.

The Mediation Services of the Bar Association of San Francisco provides three hours of mediation time at no cost with a $250 per party administrative fee.

There is no charge for participation in the Judicial Mediation program.

# EARLY SETTLEMENT PROGRAM

## Description

The Bar Association of San Francisco, in cooperation with the Court, offers an Early Settlement Program ("ESP") as part of the Court's settlement conference calendar. The goal of early settlement is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of the dispute. The two-member volunteer attorney panel reflects a balance between plaintiff and defense attorneys with at least 10 years of trial experience.

As in mediation, there is no set format for the settlement conference. A conference typically begins with a brief meeting with all parties and counsel, in which each is given an opportunity to make an initial statement. The panelists then assist the parties in understanding and candidly discussing the strengths and weaknesses of the case. The Early Settlement Conference is considered a "quasi-judicial" proceeding and, therefore, is not entitled to the statutory confidentiality protections afforded to mediation.

## Operation

Civil cases enter the ESP either voluntarily or through assignment by the Court. Parties who wish to choose the early settlement process should indicate this preference on the status and setting conference statement.

If the Court assigns a matter to the ESP, parties may consult the ESP program materials accompanying the "Notice of the Early Settlement Conference" for information regarding removal from the program.

Participants are notified of their ESP conference date approximately 4 months prior to trial.  The settlement conference is typically held 2 to 3 months prior to the trial date.  The Bar Association's ESP Coordinator informs the participants of names of the panel members and location of the settlement conference approximately 2 weeks prior to the conference date.

Local Rule 4.3 sets out the requirements of the ESP.  All parties to a case assigned to the ESP are required to submit a settlement conference statement prior to the conference.  All parties, attorneys who will try the case, and insurance representatives with settlement authority are required to attend the settlement conference.  If settlement is not reached through the conference, the case proceeds to trial as scheduled.

### Cost

All parties must submit a $250 generally non-refundable administrative fee to the Bar Association of San Francisco.  Parties who meet certain eligibility requirements may request a fee waiver.  For more information, please contact the ESP Coordinator at (415) 782-9000 ext. 8717.

* * * * * * * * * * * * * * * * * * *

For further information about San Francisco Superior Court ADR programs or dispute resolution alternatives, please contact:

Superior Court Alternative Dispute Resolution,
400 McAllister Street, Room 103
San Francisco, CA   94102
(415) 551-3876

or visit the Superior Court Website at
http://sfgov.org/site/courts_page.asp?id=3672

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO
400 McAllister Street, San Francisco, CA  94102-4514

|  |  |
|---|---|
| Plaintiff<br><br>v.<br><br>Defendant | Case No. _____<br><br>**STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**<br><br>**DEPARTMENT  212** |

The parties hereby stipulate that this action shall be submitted to the following alternative dispute resolution process:

☐ **Private Mediation**          ☐ **Mediation Services of BASF**  ☐ **Judicial Mediation**
☐ **Binding arbitration**                                               Judge _____
☐ **Non-binding judicial arbitration**                                   Judge _____
☐ **BASF Early Settlement Program**
☐ **Other ADR process (describe)** _____

Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

_____

_____

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ **Plaintiff**  ☐ **Defendant**  ☐ **Cross-defendant** |  | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ **Plaintiff**  ☐ **Defendant**  ☐ **Cross-defendant** |  | Dated: _____ |

| Name of Party Stipulating | Name of Party or Attorney Executing Stipulation | Signature of Party or Attorney |
|---|---|---|
| ☐ **Plaintiff**  ☐ **Defendant**  ☐ **Cross-defendant** |  | Dated: _____ |

☐ *Additional signature(s) attached*

**STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                     FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | | CASE NUMBER: |
|---|---|---|
| *(Check one):*  ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000) | ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:                    Time:              Dept.:          Div.:              Room:

Address of court *(if different from the address above)*:

☐ Notice of Intent to Appear by Telephone, by *(name)*:

INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted jointly by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:

      (3) ☐ have had a default entered against them *(specify names)*:

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint *(Describe, including causes of action)*:

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2009]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
www.courtinfo.ca.gov

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b. Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
   The party or parties request ☐ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
   a. ☐ The trial has been set for *(date):*
   b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

   c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
   The party or parties estimate that the trial will take *(check one):*
   a. ☐ days *(specify number):*
   b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
   The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
   a. Attorney:
   b. Firm:
   c. Address:
   d. Telephone number:
   e. Fax number:
   f. E-mail address:
   g. Party represented:
   ☐ Additional representation is described in Attachment 8.

9. **Preference**
   ☐ This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
    a. Counsel ☐ has ☐ has not   provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
    b. ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
    c. ☐ The case has gone to an ADR process *(indicate status):*

**CASE MANAGEMENT STATEMENT**

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. d.  The party or parties are willing to participate in *(check all that apply)*:
-  (1) ☐ Mediation
-  (2) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)
-  (3) ☐ Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)
-  (4) ☐ Binding judicial arbitration
-  (5) ☐ Binding private arbitration
-  (6) ☐ Neutral case evaluation
-  (7) ☐ Other *(specify):*

  e. ☐ This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.
  f. ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
  g. ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**
☐ The party or parties are willing to participate in an early settlement conference *(specify when):*

**12. Insurance**
  a. ☐ Insurance carrier, if any, for party filing this statement *(name):*
  b. Reservation of rights:  ☐ Yes    ☐ No
  c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**
Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
☐ Bankruptcy    ☐ Other *(specify):*
Status:

**14. Related cases, consolidation, and coordination**
  a. ☐ There are companion, underlying, or related cases.
    (1) Name of case:
    (2) Name of court:
    (3) Case number:
    (4) Status:
    ☐ Additional cases are described in Attachment 14a.
  b. ☐ A motion to ☐ consolidate ☐ coordinate    will be filed by *(name party):*

**15. Bifurcation**
☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**
☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**CASE MANAGEMENT STATEMENT**

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues are anticipated *(specify)*:

**18. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Total number of pages attached** *(if any)*: _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

| ▶ | |
|---|---|
| _____ | _____ |
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |

| ▶ | |
|---|---|
| _____ | _____ |
| (TYPE OR PRINT NAME) | (SIGNATURE OF PARTY OR ATTORNEY) |
| | ☐ Additional signatures are attached. |



# Superior Court of California
## County of San Francisco



**HON. JAMES J. MCBRIDE**
PRESIDING JUDGE

# Judicial Mediation Program

**JENIFFER B. ALCANTARA**
ADR ADMINISTRATOR

The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to personal injury, professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial Mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

|  |  |
|---|---|
| The Honorable Gail Dekreon | The Honorable A. James Robertson, II |
| The Honorable Ernest H. Goldsmith | The Honorable Jeffrey S. Ross |
| The Honorable Curtis Karnow | The Honorable John K. Stewart |
| The Honorable Charlene P. Kiesselbach | The Honorable Richard Ulmer |
| The Honorable Tomar Mason | The Honorable Monica F. Wiley |
| The Honorable Anne-Christine Massullo | The Honorable Mary E. Wiss |
| The Honorable Ronald Quidachay | |

Parties interested in Judicial Mediation should file the Stipulation to Alternative Dispute Resolution form indicating a joint request for inclusion in the program and deliver a courtesy copy to Dept. 212. A preference for a specific judge may be indicated on the form but assignment to a particular judge is not guaranteed. Please allow at least 30 days from the filing of the form to receive the notice of assignment. The court Alternative Dispute Resolution Administrator will facilitate assignment of cases that qualify for the program.

Note: Space and availability is limited. Submission of a stipulation to Judicial Mediation does *not* guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

**Alternative Dispute Resolution**
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3876

03/2010 (rw)

# MEDIATION SERVICES

## MEDIATION SERVICES

## What users are saying . . .

*"We had an excellent experience and, after 8 ½ hours of mediation, [the BASF mediator] settled a very difficult case involving claims against four clients of ours by a wealthy investor who claimed inadequate disclosure was made."*

**Robert Charles Friese, Esq.**
**Shartsis Friese LLP**

*"The BASF Mediation Services is the best deal in town and the mediator was the best I have ever experienced."*

**Vernon Bradley, Esq.**
**Bradley Law Offices**

*"Much thanks to the mediator and The Bar Association of San Francisco. The mediator was extraordinary; he went above and beyond the call of duty, and his knowledge of real property issues greatly assisted the parties."*

**Robert P. Travis, Esq.**
**Travis and Pon**

*"BASF staff was very helpful – stayed on the task and kept after a hard to reach party. The mediator was great!"*

**Mark Abelson, Esq.**
**Campagnoli, Abelson & Campagnoli**

*"The [BASF] mediator was excellent! He was effective with some strong, forceful personalities."*

**Denise A. Leadbetter, Esq.**
**Zacks, Utrecht & Leadbetter**

PROCEDURES, PODCASTS, FORMS,
MEDIATOR BIOGRAPHIES AND
PHOTOGRAPHS:

**www.sfbar.org/mediation**
**adr@sfbar.org or 415-982-1600**

Business
Civil Rights
Commercial
Construction
Contracts
Disability
Discrimination
Education
Employment/Workplace
Environmental
Family
Family-Certified Specialists
Fee Disputes
Financial
Government
Insurance
Intellectual Property
Intra-Organizational
Labor
Landlord/Tenant
Land Use
LGBT Issues
Malpractice: Legal-Medical-Professional
Partnership Dissolutions
Personal Injury
Probate/Trust
Products Liability
Real Estate
Securities
Taxation
Uninsured Motorist
Women's Issues
And more...

## WHAT IS BASF'S MEDIATION SERVICE?

Mediation Services was established in 2005 by The Bar Association of San Francisco (BASF) with extensive input from experienced mediators, litigators and judges. Our mediation service can assist with almost any type of dispute, from simple contract disputes to complex commercial matters.

## WHO ARE THE MEDIATORS?

They are established mediators who have private mediation practices and have met our rigorous training and experience requirements. By going through BASF, you receive the services of these highly qualified mediators at a great value.

## HOW MUCH DOES THE SERVICE COST?

A $250 per party administrative fee is paid to BASF. This fee covers the first hour of mediator preparation time and the first two hours of session time, but your mediation is not limited to three hours. Time beyond these three hours is paid at the mediator's normal hourly rate. To qualify for the pro-bono hours from our professional mediators, parties must file the Consent to Mediate form with BASF.

## HOW IS THE MEDIATOR CHOSEN?

You may request a specific mediator from our website (www.sfbar.org/mediation) and indicate your choice on the BASF Consent to Mediate form, or you may indicate on the form that you would like BASF to assist with the selection.

## WHY DO THE MEDIATORS GIVE FREE HOURS; IS THE SERVICE ONLY FOR "SMALL" MATTERS?

The mediators are professionals who have agreed to provide the free time as a service to BASF, allowing us to offer a unique mediation panel of high quality and value. Our mediators are available for any size case; we've handled everything from simple property disputes to complex business matters.

## WHY SHOULD I GO THROUGH BASF, CAN'T I JUST CALL THE MEDIATOR DIRECTLY?

The BASF mediators are available privately but have also agreed to serve on our panel and provide three free hours as a service to BASF. If you go directly to one of our mediators, you do not qualify for the pro bono hours. Once you have filed with us, you will work directly with the mediator.

## HOW LONG IS THE MEDIATION SESSION?

The time spent in mediation will vary depending on your dispute. The mediators are dedicated to reaching a settlement, whether you need a few hours or several days.

## WHO CAN USE THE SERVICE?

The BASF mediators can be utilized by anyone and is NOT limited to San Francisco residents or issues. Also, the service may be used before a court action is filed or at any time during court action.

## OUR CASE IS FILED IN COURT; HOW DO WE USE BASF'S MEDIATION SERVICE?

When you file the San Francisco court's stipulation to ADR, simply check the box indicating your choice as Mediation Services of BASF. Then complete BASF's Consent to Mediate form found on our website and file it with us, or call us for the form. (If the matter was filed in a different county, please check with that court for the appropriate process.)

## WE ARE ON A DEADLINE; HOW QUICKLY CAN WE MEDIATE?

Once all parties have filed the BASF Consent to Mediate form and paid the administrative fees, BASF can normally have you in touch with the mediator within a day or two. If you have a deadline, staff will give the matter top priority.

## WHAT TYPES OF DISPUTES CAN I MEDIATE?

BASF mediators are trained in dozens of areas of disputes. If you don't see the area you need in our 30+ panels found on our website and this brochure, just contact us; it is very likely we can match your need with one of our panelists.

## MORE INFORMATION

Our website provides photographs, short biographies and hourly rates of our mediators. You can search by name or by area of law. For personal assistance, please call 415-982-1600.

WWW.SFBAR.ORG/MEDIATION • ADR@SFBAR.ORG • 415.982.1600

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Daniel T. LeBel SBN 246169<br>Consumer Law Practice of Daniel T. LeBel<br>601 Van Ness Avenue, Suite 2080<br>San Francisco, CA 94102<br>TELEPHONE NO.: (415) 488-6540   FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*: danlebel@consumerlawpractice.com<br>ATTORNEY FOR *(Name)*: James Thomas Long d/b/a James Thomas Long Photography | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS:   400 McAllister Street
MAILING ADDRESS:   400 McAllister Street
CITY AND ZIP CODE:   San Francisco, CA 94102
BRANCH NAME:   Unlimited Division

| PLAINTIFF/PETITIONER: James Thomas Long | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Ingenio, Inc. d/b/a AT&T Interactive | CGC-10-505114 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. ☑ summons

   b. ☑ complaint

   c. ☑ Alternative Dispute Resolution (ADR) package

   d. ☑ Civil Case Cover Sheet *(served in complex cases only)*

   e. ☐ cross-complaint

   f. ☐ other *(specify documents)*:

3. a. Party served *(specify name of party as shown on documents served)*:

   Ingenio, Inc. d/b/a AT&T Interactive, a corporation

   b. ☑ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:

   registered agent for process service

4. Address where the party was served:
   CT Corp. System, 818 W 7th Street, Los Angeles, CA 90017

5. I served the party *(check proper box)*

   a. ☑ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*:               (2) at *(time)*:

   b. ☐ **by substituted service.** On *(date)*:          at *(time)*:          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:          from *(city)*:          or ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | PROOF OF SERVICE OF SUMMONS | Code of Civil Procedure, § 417.10 |
|---|---|---|

| PLAINTIFF/PETITIONER: James Thomas Long | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Ingenio, Inc. d/b/a AT&T Interactive | CGC-10-505114 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                   (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify):*
   c. ☐ as occupant.
   d. ☑ On behalf of *(specify):* Ingenio, Inc. d/b/a AT&T Interactive
     under the following Code of Civil Procedure section:

| | |
|---|---|
| ☑ 416.10 (corporation) | ☑ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**
   a. Name:
   b. Address:
   c. Telephone number:
   d. The fee for service was: $
   e. I am:
     (1) ☐ not a registered California process server.
     (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
     (3) ☐ a registered California process server:
       (i) ☐ owner ☐ employee ☐ independent contractor.
       (ii) Registration No.:
       (iii) County:

8. ☑ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date:

▶

_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)           (SIGNATURE )

**PROOF OF SERVICE OF SUMMONS**